# 24-2940

## United States Court of Appeals
### *for the*
## Second Circuit

───────────

JANE DOE 2 AND JANE DOE 1,

*Plaintiffs - Appellants*, v.

THE CONGREGATION OF THE SACRED HEARTS OF JESUS AND MARY, ROMAN CATHOLIC DIOCESE OF FALL RIVER, SISTERS OF CHARITY OF MONTREAL, SISTERS OF CHARITY OF QUEBEC, MISSIONARY OBLATES OF MARY IMMACULATE EASTERN PROVINCE, ,

*Defendants - Appellees,*

BLACK AND WHITE CORPORATIONS 1-10,

*Defendants.*

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF OF PLAINTIFFS-APPELLANTS

RICKNER PLLC
*Counsel for Plaintiff-Appellant*
14 Wall Street, Suite 1603
New York, New York 10005
(212) 300-6506

**TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................. i

TABLE OF AUTHORITIES ...................................................................... iii

PRELIMINARY STATEMENT .................................................................1

JURISDICTIONAL STATEMENT ...........................................................4

ISSUES PRESENTED...............................................................................4

STATEMENT OF THE CASE...................................................................5

      a.     The Sexual Abuse Allegations in the Complaint...................5

      b.     The Procedural Background. ..................................................7

STANDARD OF REVIEW AND SUMMARY OF THE ARGUMENT...............8

ARGUMENT ...........................................................................................10

I.  THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT EFFECTIVELY DISMISSED PLAINTIFFS' CLAIMS WITH PREJUDICE RATHER THAN TRANSFERING THE CASE TO A PROPER VENUE. ......10

      a.     The interests of justice require transferring Plaintiffs' case rather than dismissing it. .......................................................10

      b.     Venue lies in the Northern District of New York...............16

CONCLUSION .......................................................................................19

CERTIFICATE OF COMPLIANCE.......................................................20

# TABLE OF AUTHORITIES

**Cases**

*Bates v. C & S Adjusters, Inc.*, 980 F.2d 865 (2d Cir. 1992)....................................17

*Blakely v. Lew*, 607 F. App'x 15 (2d Cir. 2015) ........................................................15

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)..........................................10

*Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77 (2d Cir. 1978).............. 11, 16

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ....................................9

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005)......... 10, 15, 17

*Doe v. Wilhelmina Models, Inc.*, 229 A.D.3d 128 (1st Dept. 2024).........................14

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)...............................................16

*Graziano v. Pennell*, 371 F.2d 761 (2d Cir. 1967) ...................................................12

*Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514 (4th Cir. 1955)....................16

*Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, No. 107,

    2025 WL 554454 (N.Y. Feb. 20, 2025)........................................................ 11, 13

*Minnette v. Time Warner*, 997 F.2d 1023 (2d Cir. 1993) ..........................................11

*Phillips v. Seiter*, 173 F.3d 609 (7th Cir.1999)........................................................10

*Ray v. Ray*, 22 F.4th 69 (2d Cir. 2021) .....................................................................12

*Samuel W. v. United Synagogue of Conservative Judaism*,

    219 A.D.3d 421 (1st Dept. 2023)..........................................................................14

*Shapiro v. Syracuse Univ.*, 208 A.D.3d 958 (4th Dept. 2022), *leave to appeal*

    *denied*, 210 A.D.3d 1456 (4th Dept. 2022), *and reargument denied*,

    210 A.D.3d 1456 (N.Y. 2022) .................................................................14

*Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383 (5th Cir. 2003) ...................13

*Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392 (2d Cir. 1992)................................. 15, 16

*Sutton v. Tapscott*, 120 F.4th 1115 (2d Cir. 2024) ...................................................14

*U.S. ex rel. Rudick v. Laird*, 412 F.2d 16 (2d Cir. 1969)..........................................13

*Weiser L. Firm, P.C. v. Hartleib*, No. 23-1889, 2024 WL 5219737

    (3d Cir. Dec. 26, 2024) .......................................................................17

### Statutes

28 U.S.C. § 1332 .......................................................................................................4

28 U.S.C. § 1391(b)(2)...................................................................................... 9, 16, 17

28 U.S.C. § 1406(a) ........................................................................................... 11, 16

C.P.L.R. § 214-g ............................................................................................... 11, 14

C.P.L.R. § 205(a) ........................................................................................... 2, 11, 12

Fed. R. Civ. P. 12(b)(3)...............................................................................................4

Fed. R. Civ. P. 41(b) .................................................................................................13

# PRELIMINARY STATEMENT

Plaintiffs-Appellants Jane Doe 1 and Jane Doe 2, sisters, suffered horrific abuse as young children. After New York enacted the Child Victims Act, they timely filed suit against Defendant-Appellees—the various religious orders and clergy who turned a blind eye to the sexual abuse they suffered at the hands of multiple priests. But their claims were dismissed, effectively with prejudice, not because their claims lacked merit, or were untimely. They were dismissed purely for lack of venue.

The pattern of abuse alleged is complicated, and stretched across several states. Plaintiffs were taken from their home in Brooklyn to a school in Massachusetts, where they viciously abused by the notorious Father James Porter. But they were also abused in Maine, Rhode Island, and across New York, including, most important here, in a seminary in the Northern District of New York. There, they were each abused at least ten different times. These crimes alone would form the basis for a substantial claim, even though they are overshadowed by the worse abuse in Massachusetts.

The problem Plaintiffs face is that they failed to find the correct venue not once, but twice. Their case was initially filed in the Southern District of New York, where it was dismissed by a district judge who noted that there was a strong connection to multiple other federal districts, and named the Eastern District of

1

New York, the Northern District of New York, and the District of Massachusetts. Plaintiffs re-filed in the Eastern District, taking advantage of the savings clause in C.P.L.R. § 205(a), which relates the statute of limitations back to the original filing. But the district court there disagreed with the prior judge's finding that there was a strong connection, and dismissed the case a second time, for lack of venue. This was, effectively, a dismissal with prejudice because the savings clause in § 205(a) can only be applied once. If Plaintiffs filed again in a different district, the claims would be barred by the statute of limitations.

Plaintiffs are not contesting the second district court's complex analysis and finding that venue did not lie in the Eastern District. Plaintiffs are appealing the district court's refusal to transfer the case to the Northern District, which would carry over the relation back to the original filing, saving the claims from complete dismissal.

The district court made two errors that together warrant reversal. *First*, the district court accused Plaintiffs of improper forum shopping because they did not want to be transferred to the District of Massachusetts. But it would have been daft to file Plaintiffs claims in Massachusetts because that state has no equivalent to the Child Victims Act, and the claims would almost certainly be dismissed as untimely. No lawyer or litigant would deliberately seek out a forum where the claims would never be viable. And this is not forum shopping. The forum, the state

2

and jurisdiction where the case is filed, is New York. The substantive law and the statute of limitations is exactly the same in all four districts. Forum shopping is when a plaintiff chooses the wrong state and then belatedly seeks a transfer to another forum where the claims might still be viable, using a venue transfer to gain advantage where the law is more favorable. Here, Plaintiffs chose the right forum from the beginning, they just failed to find the right venue within that forum.

*Second*, the district court erred in finding that venue would not lie in the Northern District. Venue is not based on where the most events relating to the claim occurred. Venue instead is a qualitative analysis, asking whether what did happen in that venue is substantial enough. We submit that being sexually assaulted ten times is substantial enough to establish venue in the Northern District, even though many, many more assaults occurred in Massachusetts. What did happen in the Northern District is substantial, even if it is not the most substantial.

Consequently, we ask that this Court reverse the district court and Order this case be transferred to the Northern District of New York where the Plaintiffs claims can be decided on the merits, not venue.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1332. The Order granting Defendant-Appellees the Congregation of the Sacred Hearts of Jesus and Mary, the Roman Catholic Diocese of Fall River, Sisters of Charity of Montreal, and Sisters of Charity of Quebec's motion to dismiss for lack of venue under Federal Rule of Civil Procedure 12(b)(3) was granted by Judge Rachel P. Kovner of the United States District Court for the Eastern District of New York on September 25, 2024 and entered by the clerk on September 25, 2024.[1] A008.[2]  A timely Notice of Appeal was filed by the Plaintiffs-Appellants on October 24, 2024. A059.

## ISSUES PRESENTED

I.     Did the district court err by dismissing Plaintiffs claims, effectively extinguishing them completely, rather than transferring them to the Northern District of New York, where venue lies and the claims would still be timely

---

[1] Plaintiffs-Appellants are not appealing the dismissal of the Missionary Oblates of Mary Immaculate Eastern Province, or the finding that venue does not lie in the Eastern District of New York; Plaintiffs are only challenging the district court's refusal to transfer the matter to the Northern District of New York.

[2] The Appendix is cited herein as "A_". We provided PDF copies of the contents of this appendix to the Defendant-Appellees on February 20, 2025, by email, but did not receive a response confirming the proposed appendix was acceptable.

## STATEMENT OF THE CASE

### a. The Sexual Abuse Allegations in the Complaint.

As elementary-aged boarding school students, sisters Jane Doe 1 and Jane Doe 2 were sexually abused over the course of at least six years by priests employed by the Defendants.[3] A017-27. Jane Doe 1 and Jane Doe 2 were born in Brooklyn, New York to a tightknit family of Cuban immigrants. A016. Although the family did not come from great financial means, they were surrounded by love and support during their first years of life in New York. *Id*. Plaintiffs recall many happy memories from their early childhood—celebrating holidays, gathering for family events, and spending time at the park with their mother. *Id*. Plaintiffs' mother adamantly believed in investing in her daughters' education, and she did everything in her power to send them to the best schools possible. *Id*.

When Plaintiffs' mother received promotional material from the Roman Catholic Diocese of Fall River (the "Fall River Diocese") boasting one of its boarding schools' homelike atmosphere, rigorous academics, and promise to impart students with dignity and high ideals, she was convinced her daughters would receive an elite Catholic education. *Id*. Consequently, Plaintiffs' mother removed her daughters from school in New York and enrolled them in Sacred

---

[3] The Exhibits to the Complaint have not been included in the Appendix because they are not relevant to the venue issue, and are voluminous and formatted in a way that makes printing them difficult.

Hearts Academy in Fairhaven, Massachusetts, trusting that they would be nurtured and protected by the school's clergy and educators. *Id*.

Sacred Hearts Academy was run by the Fall River Diocese and the Congregation of the Sacred Hearts of Jesus and Mary (the "Congregation of Sacred Hearts"). A020. In the fall of 1964, clergy members came to Plaintiffs' Brooklyn home and took them to Massachusetts. A016-17. They were immediately introduced to the staff and leadership at Sacred Hearts Academy, including the head priest, Father William Carroll, and a second priest named Father James Porter. Father Porter lived just up the street and helped Father Carroll perform mass and confessionals. A020-21.

Father Porter was a vicious pedophile who later confessed to molesting over 100 young boys and girls, and Carroll was his enabler. A021. He sexual abused both sisters, repeatedly, at Sacred Hearts Academy. A021-22 But the abuse did not only occur in Massachusetts. A017-18. On the weekends, Sacred Heart Sisters (nuns from the Congregation of the Sacred Hearts), and Grey Nuns[4] took the sisters to seminaries run by the Missionary Oblates of Mary Immaculate Eastern Province ("Oblates") in Essex, New York and Newburg, New York. *Id*. The sisters were abused there at least ten times. *Id*. The Sacred Hearts Sisters and Grey Nuns knew

---

[4] "Grey Nuns" refers to nuns from either the Sisters of Charity of Montreal or the Sisters of Charity of Quebec, both of which called themselves Grey Nuns, and discovery is required to determined which is the correct one, if not both.

that the sisters were being sexually abused, and often helped coverup the abuse by treating the sisters' injuries. A017-22.

### b. The Procedural Background.

This matter as initially filed in the Southern District of New York on August 14, 2021, captioned *Doe 1, et al. v. Congregation of the Sacred Hearts of Jesus and Mary, et al.*, 21-cv-06865-DLC (S.D.N.Y.). *See* SDNY ECF #1. The Complaint named the Congregation of Sacred Hearts, the Sisters of Charity of Montreal, the Fall River Diocese, and the Sisters of the Sacred Hearts of Jesus and Mary. *Id*. An Amended Complaint was filed on April 19, 2022 that removed the Sisters of the Sacred Hearts of Jesus and Mary, as they are duplicative of the Congregation of Sacred Hearts, and added the Missionary Oblates of Mary Immaculate Eastern Province (the "Oblates"). *See* SDNY ECF #31 and #33. On January 13, 2023, the district court dismissed the Amended Complaint for lack of venue, finding that "the FAC indicates a strong connection to multiple federal judicial districts, but the Southern District of New York is not one of them," naming both the Eastern District of New York and the Northern District of New York. *See* SDNY ECF #100 at 7-8.

On July 11, 2023, the present Complaint was re-filed in the Eastern District against the Congregation of Sacred Hearts, the Sisters of Charity of Montreal, the Fall River Diocese, and the Oblates. A009. The Complaint also names the Sisters

of Charity of Quebec, who were also referred to as Grey Nuns, and based on

representations by the Montreal Grey Nuns, may be the correct defendant. *See*

EDNY ECF #12 & #18 (explaining why the Montreal Grey Nuns are, allegedly,

the wrong Grey Nuns). On September 24, 2024, the district court dismissed the

claims against the Oblates as time-barred, and dismissed all the remaining claims

for lack of venue, contradicting the prior district judge in finding that "the Eastern

District bears no more relationship to the conduct underlying plaintiffs' claims than

does the Southern District." A044. The district court also denied Plaintiffs' request

to have the claims transferred to the Northern District in the interests of justice,

stating that "[i]t is far from clear that venue would lie in plaintiffs' requested forum

of the Northern District of New York," and that the request "smacks of forum

shopping." A050.

The clerk entered judgment the next day. A008. And the Notice of Appeal

was timely filed on October 24, 2025.[5] A059.

### STANDARD OF REVIEW AND SUMMARY OF THE ARGUMENT

This Court reviews a district court's denial of a motion to transfer venue for

abuse of discretion. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir.

---

[5] Due to some confusion created by the fact that co-counsel filed the Notice of
Appeal, but the undersigned is actually handling the appeal, we filed an Amended
Notice of Appeal to make it clear which attorney would be handling the matter, at
the request of a clerk who reached out to us. A60.

2006).

The district court abused its discretion by refusing Plaintiffs' request to have the case transferred to the Northern District of New York because, the district court claimed, Plaintiffs were forum shopping. Plaintiffs are not forum shopping to try and find a more favorable jurisdiction where their claims are not barred by the statute of limitations. Plaintiffs have chosen the right forum—New York—to bring their claims under New York's Child Victims Act because those claims would almost certainly be barred in the District of Massachusetts, where there is no equivalent law. The transfer was not a belated attempt to file in a different state, after realizing the claims fail under New York law. Plaintiffs want to stay in the same forum; the only problem so far is finding the proper venue.

The district court also erred in claiming that venue would not lie in the Northern District of New York. There was no actual finding, and it appears this may have only been dicta, but it is still wrong. Plaintiffs were taken to seminaries in the Northern District where they were sexually abused ten different times. It is true the abuse they suffered in Massachusetts was worse, but Plaintiffs do not need to find the best venue, only one that has a substantial relationship to the claims. Being sexually assaulted ten different times is horrific, and substantial enough, qualitatively, for venue under 28 U.S.C. § 1391(b)(2).

## ARGUMENT

### I. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT EFFECTIVELY DISMISSED PLAINTIFFS' CLAIMS WITH PREJUDICE RATHER THAN TRANSFERING THE CASE TO A PROPER VENUE.

The district court denied the Plaintiffs' request to transfer the case to another district, if venue in the Eastern District of New York was found lacking. This ruling is premised on two errors of law. The district court erred when it accused Plaintiffs of impermissible forum shopping, choosing to effectively dismiss the case entirely rather than transferring it. And the district court erred when it found that the Northern District of New York of was not likely a proper venue. These errors, consequently, warrant reversal because "[a]n exercise of discretion that rests on an error of law is necessarily an abuse of discretion." *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 356 (2d Cir. 2015) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

### a. The interests of justice require transferring Plaintiffs' case rather than dismissing it.

As the district court recognized, "[a] 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum." *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir.1999)); A050. For example, in *Corke v. Sameiet M. S. Song of Norway*, this

10

Court found that "refusal to transfer would severely prejudice appellant" because his claims would be time barred by a dismissal, and that "[a]lleviating the burden of this type of procedural obstacle was an important purpose behind [28 U.S.C.] § 1406(a)." 572 F.2d 77, 80 (2d Cir. 1978). While transfer, on the other hand, "would permit appellant to benefit from whatever tolling of those statutes has taken place would have." *Id*. The interests of justice were so clearly in favor of transfer that this Court did not remand the matter back to the district court for a hearing, it simply ordered the transfer itself. *Id*.; *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("We deem it appropriate, however, to exercise our statutory and inherent authority to transfer this case to the Eastern District of Virginia in the interest of justice.").

That should be the result here, because dismissal deprived Plaintiffs of both the benefit of the Child Victims Act ("CVA"), C.P.L.R. § 214-g, and New York's 6-month savings provision in CPLR § 205(a), turning a procedural dismissal into what is effectively a dismissal with prejudice. The CVA only granted a single lookback period for childhood sexual abuse claims that otherwise would have been time barred, often by decades. *See Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, No. 107, 2025 WL 554454, at *1 (N.Y. Feb. 20, 2025). Plaintiffs' initial suit was dismissed for improper venue in the Southern District of New York, so the only way to preserve the claims was to refile them within 6 months under the

savings provision in § 205(a). This statute allows for refiling of claims that were dismissed for procedural reasons, like the ones here. *See Graziano v. Pennell*, 371 F.2d 761, 763 (2d Cir. 1967) ("The obvious purpose of CPLR § 205(a) … is to prevent the general statute of limitations from barring recovery because a court has ordered a timely action to be terminated for some technical defect … ."). But § 205(a) only applies once. If cases are dismissed for purely procedural reasons a second time, as they were here, the dismissal is effectively with prejudice because the claims are now completely time-barred. *See Ray v. Ray*, 22 F.4th 69, 73 (2d Cir. 2021) (finding that there can be only one "new action" under § 205(a), so the savings clause can only be applied once). The end result is that when the district court dismissed Plaintiffs' claims, rather than transferring them in the interests of justice, the claims were extinguished completely without any consideration of the merits.

The district court's rationale rested on the erroneous conclusion that Plaintiffs were engaged in impermissible forum shopping because they admitted they were trying to avoid transfer to Massachusetts—where the claims would be time-barred because Massachusetts has no equivalent to the CVA. A050-51. This was an error. Forum shopping is when a plaintiff picks a jurisdiction where the law is unfavorable, through inattention or delay, and then asks to be transferred to a new jurisdiction where a longer statute of limitations, or other favorable law, might

save the claim. *See Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 399 (5th Cir. 2003) (finding that plaintiffs were not engaged in impermissible forum shopping because the selection of forum would not change the law that would apply in the case). Thus, asking to be moved to another district in the same state is not forum shopping at all because these districts are all the same forum, New York. If New York had not been separated into four districts, like the single district in the District of New Jersey, there would not even be a dispute over venue because one district would cover the whole state.

Further, venue has no bearing on the merits of the case. It is "a forum limitation imposed for the convenience of the parties. As a concept of convenience rather than of jurisdiction … ." *U.S. ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969); *see also* Fed. R. Civ. P. 41(b) (listing improper venue among non-merits-based dismissals). Plaintiffs are not shopping for a new, more-favorable forum; they want and chose New York, and any defects in venue should not preclude a determination of the merits.

Indeed, the law that opened the door for these claims, opened the door for them in New York. The CVA, was specifically enacted to give New York residents who were sexually abused as children an opportunity to litigate claims that otherwise were barred by the statute of limitations. *See Jones* 2025 WL 554454, at *1. The law even applies to New York residents who suffered sexual abuse, even if

the abuse itself occurred outside New York. *See Shapiro v. Syracuse Univ.*, 208 A.D.3d 958, 961 (4th Dept. 2022), *leave to appeal denied*, 210 A.D.3d 1456 (4th Dept. 2022), *and reargument denied*, 210 A.D.3d 1456 (N.Y. 2022); *see also Doe v. Wilhelmina Models, Inc.*, 229 A.D.3d 128, 133 (1st Dept. 2024) ("we find that the extraterritoriality of the conduct alleged against Cal Tan does not preclude application of the CVA to plaintiff's claims against it"); *Samuel W. v. United Synagogue of Conservative Judaism*, 219 A.D.3d 421, 422 (1st Dept. 2023) ("[P]laintiff's claims against defendants were properly revived under CPLR 214-g. Even though the alleged sexual abuse occurred outside of New York, plaintiff was a New York resident at the time the action accrued."). Following this precedent, this Court recently agreed that "the CVA revived claims arising from the out-of-state sexual abuse of minors who were New York residents at the time their causes of action arose." *Sutton v. Tapscott*, 120 F.4th 1115, 1121 (2d Cir. 2024). New York is the proper forum to bring claims under this New York law. The CVA is an invitation to bring these claims in New York—claims that otherwise could not be brought anywhere else—to benefit New York residents. Accepting that invitation is not forum shopping.

This is in stark contrast to the cases relied on by the district court, where the plaintiffs were trying to get a second chance in another state with a longer statute of limitations, or other favorable law, that the plaintiff should have taken

advantage of in the first place, by suing in that forum from the beginning. In *Spar, Inc. v. Info. Res., Inc.*, the plaintiffs brought claims that were already time barred in New York, and then tried to rescue the claims with a transfer to a state with a more favorable statute of limitations. 956 F.2d 392, 394 (2d Cir. 1992). The plaintiff delayed filing his claims in New York, obviously knowing the statute of limitations was three years, and then tried to rescue them with a motion to transfer the case to Illinois, where the statute of limitations is four years, and would have been saved by the transfer. *Id*. This failed because the Plaintiff could have brought the claim timely in New York, or in Illinois, but inexplicably failed to do so. *Id*. In *Daniel v. Am. Bd. of Emergency Med.*, the lower court found that the plaintiffs lacked standing, so it was pointless to transfer the case to another jurisdiction where, presumably, the new district court would reach the same conclusion. 428 F.3d 408, 436 (2d Cir. 2005). And in *Blakely v. Lew*, there is no indication the claims would be barred by the statute of limitations; the plaintiffs were just trying to avoid litigating against the Internal Revenue Service in the agency's home turf, Washington, D.C. 607 F. App'x 15, 18 (2d Cir. 2015).

Plaintiffs' only goal is to stay in this forum, and aside from needing to satisfy the venue requirements under federal law, the Northern District is no different from the Southern or Eastern. New York law and the CVA would be applied the same way in any of these courts. Plaintiffs chose the correct

jurisdiction the first time. They did deliberately avoid a jurisdiction whose choice of law rules would likely defeat their claims, but that is not improper. As this Court held in *Spar*, it is the plaintiff's responsibility to choose the right forum with the longer statute of limitations from the beginning, and it is improper to try to transfer to *another state* when you realize you made a mistake. 956 F.2d at 395. Plaintiffs here are not trying to get advantage of another state's laws after choosing the wrong one. Plaintiffs are only grappling with procedural errors separated from any consideration of the merits. Indeed, 28 U.S.C. § 1406(a) was enacted to avoid penalizing the plaintiff with "time-consuming and justice-defeating technicalities." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (quoting *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955)).

Transfer to the Northern District of New York is in the interests of justice, and this Court should order the transfer as it did in *Corke,* or alternatively remand this matter to the district court with instructions to promptly effectuate a transfer.

**b. Venue lies in the Northern District of New York.**

The district court never actually held that venue would be improper in the Northern District, instead claiming that it is "far from clear that venue would lie in plaintiffs' requested forum of the Northern District of New York." A050. The district court is wrong. Plaintiffs were sexually assaulted ten times in the Northern

District, making up a "substantial part" of their claims, and conferring venue under 28 U.S.C. § 1391(b)(2).

In this diversity action, venue is available wherever a substantial part of the events giving rise to the claim take place. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992). The venue does not have to be where the majority of the events occurred, and there may be several available venues. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). The statute is instead "intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Daniel*, 428 F.3d at 432. "Substantiality," is more of a "qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id*. at 432–33. For example, in *Bates v. C & S Adjusters*, this Court found that the district where a debt collection letter was received by the plaintiff was significant enough to be "substantial part" of the claim. 980 F.2d at 868; *see also Weiser L. Firm, P.C. v. Hartleib*, No. 23-1889, 2024 WL 5219737, at *7 (3d Cir. Dec. 26, 2024) ("threats and attempts to initiate legal processes in Pennsylvania constitute a 'substantial part of the events ... giving rise to the claim' of abuse of process," quoting § 1391(b)(2) but inaccurately citing to § 1391(a)(2)).

This case is unique because the Plaintiffs suffered for years as part of a pattern of continuous abuse that occurred in multiple states, mostly in Massachusetts. But each assault is, on its own, a very serious injury. And if we isolated the ten times that the Sacred Hearts Sisters and Grey Nuns took the Plaintiffs to properties in the Northern District where they knew Plaintiffs would be sexually abused, those events alone would be substantial. Venue would not, we submit, be in question. So it would be profoundly unfair to find that these events are insubstantial just because the Plaintiffs were abused so many times in other states. The events in the Northern District are qualitatively substantial enough— big, meaningful parts of what was sadly a larger pattern of abuse— to confer venue. The Northern District meets the qualitative test, and is a proper venue.

## CONCLUSION

For the foregoing reasons, the September 24, 2024 Order dismissing the

Complaint for lack of venue should be dismissed and the case should be remanded

to the district court with an Order to promptly transfer it to the Northern District of

New York, where it can be litigated on the merits.


Dated: New York, New York
      February 25, 2025

                                        Respectfully submitted,

                                        _____/s/_____
                                        Rob Rickner
                                        Rickner PLLC

                                        *Attorneys for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FED. R. APP. P. 32(a)(7)(C)(i)**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **4,426** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a **proportionally spaced typeface** using **Microsoft Word** in **Times New Roman 14-point font**.

Dated: New York, New York
     February 25, 2025

Respectfully submitted,

_____/s/_____
Rob Rickner
Rickner PLLC

*Attorneys for Plaintiffs-Appellants*