# 24-2940

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

JANE DOE 2 AND JANE DOE 1,

*Plaintiffs-Appellants,*

—v.—

THE CONGREGATION OF THE SACRED HEARTS OF JESUS AND MARY, ROMAN CATHOLIC DIOCESE OF FALL RIVER, SISTERS OF CHARITY OF MONTREAL, SISTERS OF CHARITY OF QUEBEC, MISSIONARY OBLATES OF MARY IMMACULATE EASTERN PROVINCE,

*Defendants-Appellees,*

BLACK AND WHITE CORPORATIONS 1–10,

*Defendants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF OF APPELLEE SISTERS OF CHARITY OF MONTREAL

*Attorneys for Appellee Sisters of Charity of Montreal*

Evan J. O'Brien
DOWNS RACHLIN MARTIN PLLC
P.O. Box 190, 199 Main Street
Burlington, VT 05402
(802) 863-2375
eobrien@drm.com

May 27, 2025

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee Sisters of Charity Montreal states that it is a religious nonprofit corporation that has no parent corporation.  No publicly held corporation owns stock in the Sisters of Charity of Montreal.

## <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES ................................................................ iv

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ...............................1

STATEMENT OF THE CASE ...............................................................1

    A.    The Complaint .................................................................1

    B.    The Sisters of Charity of Montreal .......................................3

    C.    Proceedings in the Southern District ....................................9

    D.    Proceedings Below ...........................................................10

STANDARD OF REVIEW ................................................................12

SUMMARY OF THE ARGUMENT ....................................................13

ARGUMENT ...............................................................................15

I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
DECLINING TO TRANSFER THIS ACTION TO THE NORTHERN
DISTRICT OF NEW YORK.........................................................15

    A.    Legal Standard................................................................15

    B.    The Interests of Justice Do Not Warrant Transfer. .............................17

    C.    Venue Would Be Improper in the Northern District............................23

II.  TRANSFER TO THE NORTHERN DISTRICT OF NEW YORK WOULD
BE FUTILE IN ANY EVENT. ......................................................26

    A.    Lack of Personal Jurisdiction..............................................27

    B.    Timeliness. ...................................................................30

C.    Failure to State a Claim. .......................................................31

CONCLUSION .........................................................................................32

CERTIFICATE OF COMPLIANCE .......................................................33

CERTIFICATE OF SERVICE .................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................31

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................31

*Blakely v. Lew*,
   607 F. App'x 15 (2d Cir. 2015) (Summary Order) ..........................16, 19, 20, 21

*Care, Ltd. v. Shiboleth LLP*,
   No. 13CV4720RRMLB, 2016 WL 11472221 (E.D.N.Y. Mar. 30, 2016).........21

*In re Cuyahoga Equip. Corp.*,
   980 F.2d 110 (2d Cir. 1992) ...............................................................12

*Daniel v. Am. Bd. of Emergency Medicine*,
   428 F.3d 408 (2d Cir. 2005) ...............................................16, 24, 25

*Doe 1 v. Congregation of Sacred Hearts of Jesus & Mary*,
   No. 21-CV-6865, 2023 WL 185496 (S.D.N.Y. Jan. 13, 2023)..........9, 10, 12, 18

*Doe v. Hauppauge Union Free Sch. Dist.*,
   184 N.Y.S.3d 150 (N.Y. App. Div. 2023)........................................31

*Doe v. New York City Dep't of Educ.*,
   No. 21-CV-4332, 2023 WL 2574741 (E.D.N.Y. Mar. 20, 2023),
   *appeal dismissed* (Sept. 20, 2023) ....................................................31

*Dupuis v. Roman Cath. Bishop of Portland*,
   331 A.3d 294 (Me. 2025).....................................................................30

*Edwardo v. Roman Cath. Bishop of Providence*,
   579 F. Supp. 3d 456 (S.D.N.Y. 2022), *aff'd*, 66 F.4th 69 (2d Cir. 2023) ..........29

*Edwardo v. Roman Cath. Bishop of Providence*,
   66 F.4th 69 (2d Cir. 2023) ..................................................................28

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005) ...............................................................24

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).............................................................................27

*Minnette v. Time Warner*,
    997 F.2d 1023 (2d Cir. 1993) ........................................................21, 22

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010) ...............................................................12

*In re Nordlicht*,
    115 F.4th 90 (2d Cir. 2024) ...........................................................23, 27

*Prospect Cap. Corp. v. Bender*,
    No. 09 CIV. 826 (HB), 2009 WL 4907121 (S.D.N.Y. Dec. 21, 2009).............26

*Spar, Inc. v. Info. Resources, Inc.*,
    956 F.2d 392 (2d Cir. 1992) .......................................................*passim*

*Sutton v. Tapscott*,
    120 F.4th 1115 (2d Cir. 2024) .............................................................30

*White v. CoreLogic Nat'l Background Data, LLC*,
    No. 3:22-cv-00072 (JBA), 2023 WL 3981327 (D. Conn. June 13, 2023).........21

*Zaltz v. JDATE*,
    952 F. Supp. 2d 439 (E.D.N.Y. 2013) ...............................................25

**Rules and Statutes**

28 U.S.C. § 1391(b)(2).......................................................................10, 24

28 U.S.C. § 1391(b)(3).............................................................................10

28 U.S.C. § 1406(a) .........................................................................*passim*

C.P.L.R. § 208(b).....................................................................................30

C.P.L.R. § 214-g......................................................................................30

C.P.L.R. § 301..........................................................................................27

C.P.L.R. § 302 ................................................................................27, 28

Mass. Gen. Laws ch. 260, § 4C½ ...........................................................30

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

After Appellants twice failed to carry their burden of establishing that venue was proper, first in the Southern District of New York and then in the Eastern District of New York, did the district court abuse its discretion in declining to transfer the action to the Northern District of New York, so that Appellants could take a third bite at the apple?

## STATEMENT OF THE CASE

This appeal follows more than three years of legal proceedings in both the Southern District of New York (Cote, *J.*), and with respect to the judgment below, in the Eastern District of New York (Kovner, *J.*).[1]

### A. The Complaint

Appellants are two individuals who filed suit against Appellees under the New York Child Victims Act ("CVA"), alleging that they were subjected to physical and sexual abuse between approximately 1964 and 1970 by various corporate and individual actors arising out of their enrollment at the Sacred Heart Academy, located in Fairhaven Massachusetts.  A010, A045.[2]

---

[1] To avoid confusion, the Eastern District of New York will generally be referred to as the "district court" since it is that Court's judgment that is on appeal.  The Southern District of New York will be referred to by its full name or as the "Southern District."

[2] "A__" refers to the Appellants' Appendix.  "Br." or "Brief" refers to Appellants' opening brief filed February 25, 2025.

1

As summarized by the Southern District, Appellants allege abuse taking place at the Sacred Heart Academy, as well as the St. Joseph's Orphanage and the Provincial House, which are also located in Fairhaven, Massachusetts. A045. Appellants also alleged, "with somewhat less specificity," other instances of abuse "occurring during weekend trips to, for example, the Oblates' Seminary and Mission House in Essex, New York and an Oblate Seminary in Bucksport, Maine,"[3] and "a handful of allegations, devoid of any factual detail, that similar incidents occurred in Newburgh, New York and other known and unknown locations in New York, Maine, Massachusetts, Connecticut, Rhode Island, New Hampshire, and Vermont." *Id.*

Appellants alleged no specific allegations against the Sisters of Charity of Montreal in the Complaint,[4] and instead collectively referred to it and a separate religious order, the Sisters of Charity of Quebec, as "Grey Nuns." A011, ¶ 12; Br. 6 n.4. In conclusory fashion, Appellants alleged that unidentified "Grey Nuns" conspired with priests and other religious institutions located in Massachusetts in the alleged abuse against Appellants. *See*, *e.g.*, A026–27. No alleged abuse or

---

[3] "Oblates" refers to Missionary Oblates of Mary Immaculate Eastern Province, which was a defendant in the proceedings below but which is not a party to this appeal.

[4] Unless otherwise noted, the "Complaint" refers to the Complaint failed by Appellants in the district court on July 11, 2023. A009–043.

wrongdoing was alleged to have taken place in the Eastern District of New York. By Appellants' admission, the abuse alleged in the Complaint occurred "mostly in Massachusetts." Br. 18.

### B. The Sisters of Charity of Montreal

The record below was completely bereft of any contacts by the Sisters of Charity of Montreal in New York or any relationship between the Sisters of Charity of Montreal and the alleged events in the Complaint.[5]

The Sisters of Charity of Montreal is a congregation of women religious that exists under Canadian civil law as a nonprofit religious corporation called La Communauté des Soeurs de la Charité de l'Hôpital-Général de Montréal, commonly called the Grey Nuns. SA69, ¶ 2. During the relevant times set forth in the Complaint, *i.e.* approximately 1964 to 1970 or thereabouts, the Sisters of

---

[5] The Sisters of Charity of Montreal submitted the Declaration of Jean-Emmanuel Arsenault, the Executive Director of Gestion Providentia, the civil entity that manages the temporal and administrative affairs of the Sisters of Charity of Montreal, which activities include, among other things, the maintenance and preservation of the history and heritage of the Sisters of Charity of Montreal. The role of the Executive Director and his staff is, among other things, to work closely with and assist the Sisters of Charity of Montreal in its administrative activities and to conserve, maintain, and keep records of official documents relating to the Sisters of Charity of Montreal. Mr. Arsenault's declaration was based upon his personal knowledge, review of materials, and upon information provided by authorized personnel, agents, and legal counsel of the Sisters of Charity of Montreal, including the Archivist for the Sisters of Charity of Montreal, who researched information for the declaration. *See* Appellees' Supplemental Appendix ("SA") 69–70, ¶¶ 1 & 4.

Charity of Montreal was and is a religious and charitable corporation incorporated in Canada on March 5, 1915 and is organized and existing under the Statutes of Quebec. SA70, ¶ 5; SA76–79. During the relevant times set forth in the Complaint, the Sisters of Charity of Montreal was legally and practically separate and distinct from the Congregation of the Sacred Hearts of Jesus and Mary, the Diocese of Fall River, the Missionary Oblates of Mary Immaculate Eastern Province, and the Sisters of Charity of Quebec. SA70, ¶ 6. Although these organizations espouse the Catholic faith, there was no corporate, contractual, or operational connection between the Sisters of Charity of Montreal and these other Defendant organizations. The same is true today. *Id.*

There are a number of separate and distinct orders of women religious that are referred to colloquially as "Grey Nuns." Even though the Sisters of Charity of Montreal is sometimes colloquially referred to as "Grey Nuns," and the Sisters of Charity of Quebec is also sometimes colloquially referred to as "Grey Nuns," these organizations are two separate and distinct corporate entities and religious organizations, both under civil law and under Canon Law (ecclesiastical law), with separate governance and separate memberships. This was true during the relevant times set forth in the Complaint, and it is true today. SA70–71, ¶ 7.

During the relevant times set forth in the Complaint, the principal offices of the Sisters of Charity of Montreal were located in Montreal, Quebec, Canada, the

same city and Province where they are located today. SA71, ¶ 8. During the relevant times set forth in the Complaint, the Sisters of Charity of Montreal was not a resident of the State of New York and is not a resident of New York today. *Id.* ¶ 9. During the relevant times set forth in the Complaint, the Sisters of Charity of Montreal was not registered as a corporation with the Secretary of State of New York and is not registered with the Secretary of State of New York today. *Id.* ¶ 10. During the relevant times set forth in the Complaint, the Sisters of Charity of Montreal did not have a registered agent in the State of New York and does not have a registered agent in New York today. *Id.* ¶ 11. During the relevant times set forth in the Complaint, the Sisters of Charity of Montreal did not own real property in the State of New York and does not own real property there today. *Id.* ¶ 12. During the relevant times set forth in the Complaint, the Sisters of Charity of Montreal did not own, lease, possess, use, or have any interest in personal property in the State of New York and does not have such an interest in personal property there today. SA72, ¶ 13.

During the relevant times set forth in the Complaint, the Sisters of Charity of Montreal did not sponsor or maintain schools, orphanages, retreat houses, healthcare facilities, or offices in the State of New York or have employees that worked in the State of New York. The same is true today. The Sisters of Charity of Montreal has not established any orphanage, nursing home, school, thrift shop,

retreat house, hospital, or any other facility or service in the State of New York.
*Id.* ¶ 14. During the relevant times set forth in the Complaint, the Sisters of
Charity of Montreal did not maintain offices, agencies, bank accounts, telephone
listings, post office boxes, or mailing addresses in the State of New York and does
not maintain such today. *Id.* ¶ 15. During the relevant times set forth in the
Complaint, the Sisters of Charity of Montreal did not transact business in the State
of New York and was not authorized to transact business in the State of New York.
The same is true today. *Id.* ¶ 16.

During the relevant times set forth in the Appellants' Complaint, the Sisters
of Charity of Montreal did not conduct ministries, activities, or outreach with
respect to individuals located in the State of New York. During the relevant times
set forth in the Complaint, no member of the Sisters of Charity of Montreal served
at the Oblate Seminary and Mission House in Essex, New York, or at the Oblate
Seminary in Newburgh, New York. The Sisters of Charity of Montreal has no
record of any Montreal Sister in the State of New York. The same is true today.
*Id.* ¶ 17.

Based on the diligent internal research of the Sisters of Charity of Montreal,
Mr. Arsenault was not aware of any efforts by the Sisters of Charity of Montreal to
purposefully avail itself of any rights, privileges, or benefits in the State of New
York during the relevant times set forth in the Complaint or today. Mr. Arsenault

was not aware of any substantive contacts, let alone continuous or systematic contacts, between the Sisters of Charity of Montreal and the State of New York during the relevant times set forth in the Complaint or today. SA73, ¶¶ 18–19.

During the relevant times set forth in the Complaint, some members of the Sisters of Charity of Montreal performed charitable works in Massachusetts through a civil corporation called The Grey Nuns Charities, Inc., which was and is organized under the laws of Massachusetts, and was and is registered as a charitable corporation with the Secretary of the Commonwealth of Massachusetts. *Id.* ¶ 20. During the relevant times set forth in the Complaint and thereafter, members of the Sisters of Charity of Montreal served in specific sites located in the Archdiocese of Boston in Massachusetts, the Diocese of Worcester in Massachusetts, the Diocese of Manchester in New Hampshire, the Diocese of Trenton in New Jersey, and the Diocese of Toledo in Ohio—all of which were and are ecclesiastical and geographical regions outside the Diocese of Fall River. *Id.* ¶ 21.

During the relevant times set forth in the Complaint and thereafter, no members of the Sisters of Charity of Montreal were assigned to or served at the Sacred Heart Academy in the Fall River Diocese, at St. Joseph's Orphanage in the Fall River Diocese, at the Sacred Heart Provincial House in Fairhaven, Massachusetts, or at any other facilities or locations which Appellants allege they

7

attended or visited.  SA73–74, ¶ 22.  During the relevant times set forth in the Complaint, no members of the Sisters of Charity of Montreal were assigned to or served at the St. Joseph's Orphanage in Lewiston, Maine, at the Oblate Seminary in Bucksport in Bucksport, Maine, or at any other orphanage, retreat house, parish, school, or seminary in Maine.  SA74, ¶ 22.

During the relevant times set forth in the Complaint and thereafter, the Sisters of Charity of Montreal was not involved with the Sacred Heart Academy in the Fall River Diocese, with St. Joseph's Orphanage in the Fall River Diocese, with the Sacred Heart Provincial House in Fairhaven, Massachusetts, or with any other facilities or locations which the Appellants allege they attended or visited. During the relevant times set forth in the Complaint, the Sisters of Charity of Montreal did not own or operate St. Joseph's Orphanage in Lewiston, Maine, or any other orphanage, retreat house, parish, school, or seminary in Maine.  *Id.* ¶ 23.

Given the Sisters of Charity of Montreal's lack of involvement with any of the institutions, individuals, and locations referenced in Appellants' Complaint, the Sisters of Charity of Montreal believes that Appellants mistakenly named this entity as a defendant in the civil action. *Id.* ¶ 24.  Appearing and litigating this action in the State of New York would subject the Sisters of Charity of Montreal to substantial financial, logistical, and personal burdens.  The organization, a

charitable and religious organization with declining membership, is already facing substantial legal costs in connection with this matter, and most of its remaining members are elderly. Subjecting the Sisters of Charity of Montreal to appear and defend itself in protracted litigation in New York in connection with institutions, individuals, and locations with which the Sisters were not involved would exact considerable undue burdens upon the organization and its members. *Id.* ¶ 25.

### C. Proceedings in the Southern District

On August 14, 2021, Appellants filed suit in the Southern District of New York and in their amended complaint asserted causes of action for negligence; negligent hiring, supervision, and retention; gross negligence; premises liability; and breach of fiduciary duty. Appellees, including the Sisters of Charity of Montreal, moved to dismiss on various grounds including timeliness, lack of personal jurisdiction, improper venue, and failure to state a claim. On January 13, 2023, the Court issued an Opinion and Order dismissing the case for improper venue. *See Doe 1 v. Congregation of Sacred Hearts of Jesus & Mary*, No. 21-CV-6865, 2023 WL 185496 (S.D.N.Y. Jan. 13, 2023).

The Court observed that "[t]he focus of the plaintiffs' claims is on events that transpired at the [Sacred Heart] Academy, St. Joseph's Orphanage, and the Provincial House, all of which were in the District of Massachusetts." *Id.* at *2. Appellants did not contend that a "substantial part of the events or omissions

9

giving rise to the claim" occurred in the Southern District of New York. 28 U.S.C. § 1391(b)(2). The Court rejected Appellants' reliance on 28 U.S.C. § 1391(b)(3)[6] because "venue would be proper in at least the District of Massachusetts." *Id.* at *3. The Court declined to transfer the case to the District of Massachusetts, noting that Appellants "ask[ed] the Court not to transfer to that district due to a possible cap on damages under Massachusetts law." *Id.* (emphasis in original).

Given that venue was improper in the Southern District and Appellants actively resisted transfer to the District of Massachusetts, the Court declined to find that the interests of justice warranted transfer. *See id.* ("[T]here is no indication that the interests of justice mandate transferring the case to another district."). The Court accordingly dismissed the amended complaint "without prejudice to refiling in a district where venue lies." *Id.* at *4.

Appellants did not appeal.

### D. Proceedings Below

On July 11, 2023, Appellants re-filed the Complaint in the Eastern District of New York, repeating the same factual allegations raised in their amended complaint in the prior suit. A045. The Complaint brought the same five common-

---

[6] "A civil action may be brought in . . . (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

law claims:  negligence; negligent training, supervision, and retention; gross negligence; premises liability; and breach of fiduciary duty.  The Appellees again moved to dismiss for lack of personal jurisdiction, improper venue, untimeliness, and failure to state a claim.  A046.

In a Memorandum and Order dated September 24, 2024, the district court dismissed Appellants' claims against the Oblates on timeliness grounds and dismissed the claims against the Sisters of Charity of Montreal and other Appellees for improper venue.  A046.  The district court stated that Appellants "have not alleged a single incident of abuse occurring in the Eastern District of New York." A048.  The only allegations pertaining to the Eastern District were not "significant" or "material," but were rather "incidental to the abuse plaintiffs experienced" and lacked a "close nexus"  to their claims.  A048–49.

The district court denied Appellants' alternative request for transfer to the Northern District and provided several reasons.  First, the district court noted that all Appellees raising venue arguments opposed transfer and instead requested dismissal, although the Sisters of Charity of Montreal asked that if the case is not dismissed, that it be transferred instead to the District of Massachusetts.  A050. Second, the district court perceived Appellants not to have been diligent in choosing a proper forum, having failed not once, but twice, to file in a proper venue.  The district court appropriately concluded that Appellants' request for a

third opportunity to file in New York "smacks of forum shopping." *Id.* Third, while the district court did not decide the issue, it expressed serious doubt that venue would lie in the Northern District, since the gravamen of the Complaint centered on alleged abuse in Massachusetts and the only alleged conduct taking place in the Northern District related to a single Appellee that was dismissed on timeliness (not venue) grounds and which is not a party to this appeal.[7] *Id.*

On September 25, 2024, the district court entered final judgment. Appellants do not appeal the district court's holding that venue was improper in the Eastern District. Br. 4 n.1 ("Plaintiffs-Appellants are not appealing the . . . finding that venue does not lie in the Eastern District of New York[.]"). Appellants challenge only the district court's denial of transfer to the Northern District.

## STANDARD OF REVIEW

A district court's denial of a motion to transfer venue is subject to an abuse of discretion standard of review. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) ("We review a district court's denial of a motion to transfer venue for abuse of discretion."); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) ("[M]otions for transfer lie within the broad discretion of the district court[.]").

---

[7] The Missionary Oblates of Mary Immaculate Eastern Province.

## SUMMARY OF THE ARGUMENT

Appellants concede that venue in the Eastern District was improper, and do not challenge the district court's judgment in that regard. Appellants only challenge the district court's decision not to transfer the action to the Northern District, which would be the *third* federal district in the State of New York (out of four) in which Appellants would bring their claims. It is well-settled that the decision whether to allow or decline transfer in these circumstances lies within the sound discretion of the district court. In this case, the district court acted well within its discretion, and its decision not to transfer should not be disturbed on appeal.

Appellants initially chose to file the action in the Southern District of New York. After their Amended Complaint was dismissed by Judge Cote for improper venue, Appellants strategically opted not to file suit in the District of Massachusetts,[8] where they concede the majority of the alleged events occurred, or in the District of Maine, or even in the Northern District. They instead filed an identical action in the district court, a venue that had no more relationship or connection to the allegations in their complaint than the Southern District did. In their Complaint filed in the district court, Appellants did not allege a single

---

[8] Appellants suggest that claims filed in the District of Massachusetts "would almost certainly be barred." Br. 9.

incident of abuse, negligence, or alleged failure to prevent abuse by any Appellee occurring within the Eastern District of New York. A048–049. The district court therefore dismissed the Complaint for improper venue, again.

Having twice failed to exercise diligence in choosing a forum, Appellants are not entitled to a third attempt at forum shopping in New York's federal courts. Two federal courts have found that the gravamen of the Complaint concerns alleged events taking place in Massachusetts, and the Sisters of Charity of Montreal did not oppose transfer to Massachusetts below. Yet for purely strategic aims, Appellants have shuffled in vain across various judicial districts in New York, searching for a venue they perceive will be more favorable than the one in which the case has always logically belonged. This is classic forum shopping, as the district court appropriately recognized.

The Sisters of Charity of Montreal oppose transfer to the Northern District, and with good reason, since they have no connection to the Northern District, and the only defendant that may have had such a connection (the Oblates) was dismissed on timeliness grounds and is not even a party to this appeal. The district court reasonably expressed doubt that venue would be proper in the Northern District. The Sisters of Charity of Montreal would go further, affirmatively asserting that venue does not lie in the Northern District. Regardless, the district

court did not abuse its discretion in concluding that interests of justice did not support transfer on this record.

To the reasons provided by the district court, the Sisters of Charity of Montreal add that transfer would be futile because the Northern District could not exercise specific jurisdiction over it, Appellants' claims are untimely, and Appellants have failed to state claims for which relief can be granted. Transfer to yet another judicial district in New York would needlessly prolong this long-running and ill-founded action against the Sisters of Charity of Montreal and would excuse Appellants' lack of diligence and campaign of forum shopping. That Appellants believe that they cannot re-file their complaint a third time under the CVA in the absence of transfer does not by itself justify transfer. The district court's judgment should be affirmed.

## ARGUMENT

## I.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF NEW YORK.

### A.  Legal Standard.

Section 1406(a) of Title 28 provides that, as here, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest

of justice." *Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 435 (2d Cir. 2005). A "compelling reason" for transfer is "generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum." *Id.*

However, this Court has cautioned that Section 1406(a) "should not operate automatically to give a plaintiff an additional opportunity to select the district of litigation." *Spar, Inc. v. Info. Resources, Inc.*, 956 F.2d 392, 395 (2d Cir. 1992). While a plaintiff "already has the option of shopping for a forum with the most favorable law, . . . [o]nce a plaintiff has commenced its action, . . . its opportunity to search for a more conducive forum ordinarily is concluded." *Id.* In particular, where transfer "would reward plaintiffs for their lack of diligence in choosing a proper form," it "thus would not be in the interest of justice." *Id.* (affirming refusal to transfer venue when "plaintiffs' attempt to transfer the case was, in some respect, forum shopping"); *see also Blakely v. Lew*, 607 F. App'x 15, 18 (2d Cir. 2015) (Summary Order) (holding that district court did not abuse its discretion by dismissing the case "after concluding that appellants' attempt to bring their case in the Southern District of New York constituted impermissible forum shopping").

## B.     The Interests of Justice Do Not Warrant Transfer.

The district court explained in detail the reasons why it declined to transfer the case to the Northern District.  A049–051.  The Court's Order demonstrates that it permissibly exercised its discretion to deny transfer.

*First*, the Sisters of Charity of Montreal did not consent to transfer, since it lacked minimum contacts with New York, let alone a sufficient connection to the Northern District to support venue.  No other Appellee consented to transfer either, for similar reasons.  Transfer would have imposed unnecessary costs on the Sisters of Charity of Montreal and other Appellees, who had already been subjected to suit in two improper venues and would be unreasonably saddled with further unnecessary and expensive litigation in a third improper venue.  Appellants cited no case below, nor on appeal, that required transfer under similar circumstances and over the objections of appellees.

*Second*, the district court had ample basis to conclude that Appellants had failed to exercise diligence in choosing a proper forum, not just once but twice, and that allowing transfer would provide "further opportunity for forum shopping." A050.  Transfer to the Northern District would have constituted Appellants' third foray into a an improper venue in New York and the third time they avoided filing in Massachusetts, even though two federal district judges have recognized that the gravamen of Appellants' Complaint is centered on events allegedly taking place in

17

the District of Massachusetts. A048; *Doe 1*, 2023 WL 185496, at *2. Appellants first failed to conduct an adequate pre-suit investigation to determine that venue was proper in the Southern District of New York. They had the opportunity to have the action transferred to the District of Massachusetts where venue would have been proper, but refused for strategic reasons. A051. Appellants inexplicably responded to the dismissal in the Southern District by filing the identical Complaint in the Eastern District, where no alleged abuse had occurred either, and whose only conceivable connection to the case was that Appellants were raised in Brooklyn. *See* A047 (stating that "Judge Cote has already ably articulated the venue problems with plaintiffs' case, which were not remedied by refiling in the Eastern District."). The entirely predictable result of this was that the district court again dismissed the Complaint for improper venue, after Appellees were forced to expend significant energy and cost seeking dismissal of the Complaint a second time. The district court was justified in describing this pattern of conduct as "forum shopping." A050.

*Third*, the district court reasonably doubted that transfer to the Northern District would be proper. *See* A050 ("It is far from clear that venue would lie in plaintiffs' requested forum of the Northern District of New York, because this lawsuit is focused on alleged sexual abuse at a Massachusetts boarding school. And virtually all the conduct alleged to have occurred in the Northern District

relates only to the Oblates, a defendant being dismissed from this action on timeliness grounds." (internal citations omitted)). Appellants' request would have transferred the case to a forum where venue would have been highly questionable as to the Appellees,[9] and where the only possible party with such a connection has been dismissed. The district court acted well within its discretion, because such a disposition would not only have been unjust, but would have precipitated a third round of dispositive motion practice, with the case being potentially dismissed for a third time. Assessed as a totality, the reasons articulated by the district court in its Order amply supported the denial of transfer.

Moreover, the district court's decision was well rooted in precedent. This Court in *Spar* and *Blakely* affirmed a district court's denial of transfer under facts more amenable to transfer than are present in this case. *Spar*, 956 F.2d 392; *Blakely*, 607 F'Appx 15. In *Spar*, the plaintiff filed sued in New York Supreme Court, and the defendant removed the action to the Southern District of New York and then moved to dismiss due to New York's statute of limitations. 956 F.2d at 393. In response, plaintiff cross-moved to transfer the action to the Northern District of Illinois, and was denied. *Id.* This Court affirmed, concluding that "allowing a transfer in this case would reward plaintiffs for their lack of diligence

---

[9] While the district court did not decide the issue, venue would not have been proper in the Northern District of New York as to the Sisters of Charity of Montreal. *See infra* Section I.C.

19

in choosing a proper forum and thus would not be in the interest of justice" and that "plaintiff's failure to shop diligently before the action's inception is no reason to allow it now to 'bargain hunt.'" *Id.* at 394–95.

Unlike this case, when the plaintiff in *Spar* sought transfer to the Northern District of Illinois, it had not previously filed an unsuccessful action in an improper forum as Appellants had below. Nor did the plaintiff in *Spar* openly avoid filing suit in the correct forum for strategic reasons. Given that the denial of transfer was held to be an appropriate use of discretion in *Spar*, the same result should certainly follow here.

*Blakely* more closely resembles this case. In that action, the plaintiffs filed suit in the Southern District of New York to recoup property they forfeited to the government in a consent judgment, "after multiple adverse rulings in the Eastern District of Michigan regarding their right to recover their forfeited property." 607 F. App'x at 17. As here, the lawsuit "involve[d] the same underlying claims and issue as the previous lawsuits, turn[ed] on the same facts, and ultimately request[ed] the same relief." *Id.* Both the district court and this Court concluded that venue did not lie, and this Court affirmed the district court's denial of transfer to the District of Columbia: "Given appellants' unsuccessful history of litigation in the Eastern District of Michigan, the district court did not abuse its discretion by dismissing the case after concluding that appellants' attempt to bring their case in

20

the Southern District of New York constituted impermissible forum shopping." *Id.*
at 18. This Court's reasoning in *Blakely* is logically portable to this case, as
Appellants' "unsuccessful history of litigation" in the Southern District prior to the
Eastern District, followed by its strategic attempt to transfer, likewise amount to
"impermissible forum shopping." *Id.*

Appellants rely on *Minnette v. Time Warner*, 997 F.2d 1023 (2d Cir. 1993),
which is inapposite. Br. 11. The plaintiff in *Minnette* was *pro se*, and filed a Title
VII complaint against Time Warner in the Western District of New York, where
she had been living at the time of filing. *Id.* at 1025; *see also White v. CoreLogic
Nat'l Background Data, LLC*, No. 3:22-cv-00072 (JBA), 2023 WL 3981327, at *2
(D. Conn. June 13, 2023) (declining to apply *Minnette* in case where plaintiff "is
not pro se, and has in fact engaged in extensive forum shopping"). Her claim was
dismissed because she had sought and been denied employment by Time Warner
in Virginia, not in the Western District or in the Southern District, where she
relocated while her case was pending and sought to have the case transferred. *Id.*
at 1025–26. Unlike the present case, the plaintiff in *Minnette* had not previously
filed suit in the wrong forum, and while transfer to the forum of her choice likely
would have been improper, her request appeared to be a mistake by a self-
represented party rather than forum shopping. *E.g.*, *Luv n' Care, Ltd. v. Shiboleth
LLP*, No. 13CV4720RRMLB, 2016 WL 11472221, at *5 (E.D.N.Y. Mar. 30,

21

2016) ("Courts transfer cases 'in the interest of justice' when a plaintiff with a seemingly meritorious case has mistakenly, but honestly, filed in the wrong venue. But the court may decline to transfer a case when it determines that the case was filed in bad faith or as a form of harassment, or when the plaintiffs' activity suggests that they are engaging in impermissible forum shopping.").

The *Minnette* district court's refusal to transfer under these facts was vacated by this Court as an abuse of discretion, and importantly this Court ordered that the action be transferred not to the improper forum of the plaintiff's choosing (the Southern District), but to the forum where the case should have been filed (the Eastern District of Virginia), where the defendant had consented to transfer. *Id.* at 1025, 1027. *Minnette* is thus distinguishable on a number of grounds, and this Court's disposition in *Minnette* does not even support the relief that Appellants are requesting in this appeal.[10]

Even if Appellants cannot re-file a third time under the CVA, that alone does not mandate transfer. "The interest of justice analysis is not a vehicle for resurrecting a claim lost because the plaintiff erred in [its] initial choice of forums." *Spar*, 956 F.2d at 395 (internal quotation marks and citations omitted). Nor should it be a vehicle for resurrecting a claim because Appellants erred in their

---

[10] If *Minnette* were to apply, the disposition would be to transfer the action to the District of Massachusetts, which Appellants do not request and have consistently opposed.

22

"initial" and second choice of forums. As in *Spar*, Appellants had "ample opportunity to bring this action within the limitations period," and in a proper venue. *Id.* Appellants failed to exercise diligence in two attempts to file claims in the proper venue, despite the fact that these claims had long been time-barred prior to the enactment of the CVA. They have been represented by counsel throughout this litigation, and "our system virtually mandates that a responsible plaintiff be aware of applicable limitations periods." *Id.* at 394–95.

The district court did not abuse its discretion in concluding that transfer would not be in the interests of justice. A051.

### C.    Venue Would Be Improper in the Northern District.

In the alternative, the district court's judgment should be affirmed because venue did not lie in the Northern District as to the Sisters of Charity of Montreal. *See* 28 U.S.C. § 1406(a) (providing for transfer to "any district or division in which [the case] could have been brought"). While the district court did not decide this issue, this Court may affirm on any basis available in the record. *See In re Nordlicht*, 115 F.4th 90, 114 (2d Cir. 2024) ("[W]e are free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." (internal quotation marks and citation omitted)).

For venue to be proper in the Northern District, it must constitute "a judicial district in which a substantial part of the events or omissions giving rise to the

23

claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). This Court has "caution[ed] district courts to take seriously the adjective 'substantial.'" *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432–33. "*[S]ignificant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co.*, 417 F.3d at 357 (emphasis in original). "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant,' and thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Daniel*, 428 F.3d at 433.

According to Appellants' Complaint, a "substantial" part of the alleged events or omissions giving rise to the claim did not occur in the Northern District. Plaintiffs acknowledge that the alleged abuse occurred "mostly in Massachusetts." Br. 18. There are only sparse references in the Complaint to Appellants' alleged transport from Massachusetts to the Northern District of New York, and subsequent alleged abuse there. *See* A017, ¶¶ 46–48 (Appellants "recall being

forced to kneel and pray in front of the statue at Our Lady of Hope Shrine, in

Essex, New York" and a "Sacred Hearts nun named Lori" driving them to Essex,

New York, "along with other Sacred Hearts Nuns and Grey Nuns"); A018, ¶ 55

(similar conclusory allegations regarding a location in Newburgh, New York).

Further, the occasional allegations of abuse in the Northern District are directed

toward the Oblates, not the Sisters of Charity of Montreal.  *See* A013, ¶ 24; A026–

27, ¶¶ 109–113 (group-pled allegations against the "Grey Nuns" containing no

allegations occurring in the Northern District).  Assessing the Complaint as a

whole, it fails to allege a "close nexus" between Appellants' claims and the

Northern District, which precludes a finding that a "substantial part" of the events

or omissions giving rise to the claims took place there.[11]

That conclusion is buttressed by Mr. Arsenault's unrebutted declaration,

which avers that during the relevant period of approximately 1964 to 1970, the

Sisters of Charity of Montreal did not serve at the Oblate Seminary and Mission

House in Essex, New York, or at the Oblate Seminary in Newburgh, New York.

SA72, ¶ 17; *see Zaltz v. JDATE*, 952 F. Supp. 2d 439, 447 (E.D.N.Y. 2013)

---

[11] Appellants rejoin that their having allegedly been abused "ten times" in the
Northern District suffices.  Br. 16.  The Complaint does not so allege.  It asserts
only that Appellants were transported to Essex, New York and Newburgh, New
York "at least ten (10) times."  A017, ¶ 46; A018, ¶ 55.  Moreover, as this Court
has explained, determining substantiality is not a matter of "adding up the number
of contacts."  *Daniel*, 428 F.3d at 432–33.

(Bianco, *J.*) (on motion to dismiss for improper venue, the district court "may consider evidentiary matters outside the pleadings, by affidavit or otherwise, regarding the existence of jurisdiction").  By their own admission, Appellants are guessing that the alleged "Grey Nuns" described in the Complaint belonged to the Sisters of Charity of Montreal, as opposed to some other religious order, non-profit corporation, or entity.  Br. 6 n.4.  Appellants cannot carry their burden to show that venue in the Northern District would be proper as to the Sisters of Charity of Montreal.  *See Prospect Cap. Corp. v. Bender*, No. 09 CIV. 826 (HB), 2009 WL 4907121, at *2 (S.D.N.Y. Dec. 21, 2009) ("Prospect bears the burden to show that venue is proper as to each defendant for each cause of action it pleads.").  Transfer thus was not warranted under 28 U.S.C. § 1406(a).

For this additional reason, the district court did not abuse its discretion, and its judgment should be affirmed.

## II.  TRANSFER TO THE NORTHERN DISTRICT OF NEW YORK WOULD BE FUTILE IN ANY EVENT.

In addition to improper venue, the Sisters of Charity of Montreal moved to dismiss for lack of personal jurisdiction, untimeliness, and failure to state a claim. SA80–113.  While the district court did not reach those issues below, the Sisters of Charity of Montreal briefly address them for preservation purposes and to further

illustrate why Appellants' requested transfer to the Northern District would be futile, notwithstanding the venue problem. *In re Nordlicht*, 115 F.4th at 114.

### A.    Lack of Personal Jurisdiction.

The Sisters of Charity of Montreal are not amenable to personal jurisdiction in New York. It was not organized or doing business in New York at any relevant time and so is not subject to the "general jurisdiction" of New York courts. *See* C.P.L.R. § 301; *see also* A011, ¶ 12 (alleging that it is "a foreign citizen of Canada and maintains its principal place of business in Canada"). The Sisters of Charity of Montreal had no contacts, let alone minimum contacts, with New York during the relevant times that would establish specific jurisdiction under either C.P.L.R. § 302 or the Due Process Clause of the Fourteenth Amendment, nor would the exercise of specific jurisdiction comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Appellants do not even allege in the Complaint that unidentified "Grey Nuns" were directly involved in alleged sexual abuse in New York. *See* A017, ¶ 51 ("the Grey Nuns present would leave and pray elsewhere"). As discussed *supra*, Appellants' claims against the Sisters of Charity of Montreal consist only of vague allegations of misconduct based on acts that allegedly took place primarily at locations in Massachusetts. A026–27, ¶¶ 109–113.

It is undisputed that the Sisters of Charity of Montreal lack minimum contacts with New York such that the long-arm statute would apply. The Sisters of Charity of Montreal did not own or lease real estate in New York, operate any institutions in New York, or conduct any activities in New York, related to New York, or related to residents of New York. No Sisters served at Essex, New York or Newburgh, New York during the relevant period described in the Complaint. SA71–73, ¶¶ 9–19.

Additionally, any alleged tortious conduct in New York does not give rise to jurisdiction because none of the purported "Grey Nuns" vaguely referenced in the Complaint were employees or agents of the Sisters of Charity of Montreal, and, even if they were, they did not act within the scope of any agency relationship or employment. *See Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 74 (2d Cir. 2023) ("To be considered an agent under section 302 [of the C.P.L.R.], the alleged agent must have acted 'for the benefit of and with the knowledge and consent' of the non-resident principal and the non-resident principal must have 'exercised some control over' the alleged agent."). In the absence of such an agency relationship, Appellants' guesswork cannot establish any "tortious act" in New York under the long-arm statute.

Further, any allegedly tortious acts by separate entities in New York are not attributable to the Sisters of Charity of Montreal and do not confer jurisdiction over

them. *Cf.* A055 ("The allegation that defendants share a common religion, or are 'affiliated' in some unspecified way to a common church . . . does not come close to yielding a plausible inference that they are so related that claims against one defendant will necessarily rise or fall with claims against the others."). Appellants did not plead supporting facts—and certainly no facts specific to the Sisters of Charity of Montreal—that they allegedly had "knowledge and consent" with respect to alleged abuse by others. *Edwardo v. Roman Cath. Bishop of Providence*, 579 F. Supp. 3d 456, 472 (S.D.N.Y. 2022) (plaintiff did not satisfy jurisdictional burden over specific organization by relying upon a purported general awareness of a pattern of abuse within Catholic institutions), *aff'd,* 66 F.4th 69 (2d Cir. 2023).

Exercising specific jurisdiction under these circumstances would not be consistent with traditional notions of fair play and substantial justice. Litigating in New York will impose significant ongoing burdens to the Sisters of Charity of Montreal, a Canadian religious and charitable organization. Massachusetts has a superior interest in the lawsuit as compared to New York, whose interest in adjudicating the dispute is tenuous at best since one of the Appellants is a Georgia citizen, and the vast majority of allegations giving rise to the suit allegedly occurred in Massachusetts.

### B.   Timeliness.

Even if the Sisters of Charity of Montreal were amenable to jurisdiction, Appellants nearly sixty-year-old claims are not timely.  The claims are barred under Massachusetts law and Maine law.  *See* Mass. Gen. Laws ch. 260, § 4C½; *Dupuis v. Roman Cath. Bishop of Portland*, 331 A.3d 294 (Me. 2025) (holding unconstitutional state statute purporting to revive previously time-barred civil claims of child sexual abuse).  C.P.L.R. § 208(b) does not help Appellants even though they allege sexual abuse while under the age of eighteen, because they were over the age of fifty-five at the time they filed suit on August 14, 2021.  Even if C.P.L.R. § 214-g applies extraterritorially to alleged abuse occurring outside of New York, *see Sutton v. Tapscott*, 120 F.4th 1115 (2d Cir. 2024), Appellants have not plausibly alleged that they were residents of New York between 1964 and 1970, given they lived in Massachusetts as boarding students.  *Compare* A011 ¶ 8 (alleging in conclusory fashion that Appellants "were residents of and domiciled" in New York), *with* A013, ¶ 22 *and* A039, ¶ 193 (alleging that other Appellees had a "special relationship" with Appellants because they boarded at Sacred Heart Academy in Fairhaven, Massachusetts).  Further, Appellants failed to allege intentional or negligent acts or omissions by the Sisters of Charity of Montreal that were a cause of Appellants' alleged injuries.  *Tapscott*, 120 F.4th at 1120.

### C. Failure to State a Claim.

Finally, even if Appellants could surmount the jurisdictional, venue, and timeliness obstacles in the Northern District, their claims would still be subject to dismissal for failure to state a claim. Appellants' vague and conclusory allegations against the Sisters of Charity of Montreal fail to satisfy the plausibility standard imposed under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Not even Appellants have confidence that the Sisters of Charity of Montreal are the same "Grey Nuns" who they believe played a role in the alleged abuse described in the Complaint. Further, Appellants' claims are premised on respondeat superior liability, which is inapplicable on these alleged facts. *See Doe v. New York City Dep't of Educ.*, No. 21-CV-4332, 2023 WL 2574741, at *5 (E.D.N.Y. Mar. 20, 2023), *appeal dismissed* (Sept. 20, 2023) ("[I]t is well-settled in the Second Circuit that employers are not liable to plaintiffs for sexual assaults under a theory of respondeat superior since sexual misconduct is necessarily outside the scope of employment.").

Claims premised on negligent supervision or training likewise fail because the Sisters of Charity of Montreal did not have custody or control over, and thus, did not owe a duty to Appellants at various locations outside of the entity's purview. *Doe v. Hauppauge Union Free Sch. Dist.*, 184 N.Y.S.3d 150, 153 (N.Y. App. Div. 2023) (dismissing negligence claim where plaintiff's own allegations

31

"demonstrated that the subject incident took place when the district had no custody or control of the plaintiff and no duty to monitor or supervise [abuser's] conduct"). Accordingly, for myriad reasons, Appellants' claims fail under the plausibility standard.

To be clear, this Court need not reach any of these issues because the district court did not abuse its discretion in denying transfer to the Northern District of New York. Even so, the record is replete with other reasons why Appellants' Complaint would fail out of the starting gate in the Northern District. For these additional reasons, transfer would serve no useful purpose.

## **CONCLUSION**

For the foregoing reasons, Appellee Sisters of Charity of Montreal respectfully submits that the judgment of the United States District Court for the Eastern District of New York should be AFFIRMED.

May 27, 2025

             */s/ Evan J. O'Brien*
             Evan J. O'Brien
             DOWNS RACHLIN MARTIN PLLC
             P.O. Box 190, 199 Main Street
             Burlington, VT 05402
             (802) 863-2375
             eobrien@drm.com

             *Attorneys for Appellee Sisters of*
             *Charity of Montreal*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7) and Local Rule 32.1(a)(4) because this brief contains 7,730 words,

excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

version 2408 in a 14-point Times New Roman font.

>  _/s/ Evan J. O'Brien__
> Evan J. O'Brien

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 27, 2025 the foregoing document was served on all parties or their counsel of record through the ACMS system.

_/s/ Evan J. O'Brien_____
Evan J. O'Brien