# 24-2940

## United States Court of Appeals

### *for the*

## Second Circuit

---

JANE DOE 2, JANE DOE 1,

*Plaintiffs-Appellants,*

– v. –

THE CONGREGATION OF THE SACRED HEARTS OF JESUS AND MARY,
ROMAN CATHOLIC DIOCESE OF FALL RIVER, SISTERS OF CHARITY
OF MONTREAL, SISTERS OF CHARITY OF QUEBEC, MISSIONARY
OBLATES OF MARY IMMACULATE EASTERN PROVINCE,

*Defendants-Appellees,*

BLACK AND WHITE CORPORATIONS 1-10,

*Defendants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE CONGREGATION OF THE SACRED HEARTS – UNITED STATES PROVINCE

SANFORD N. TALKIN
TALKIN, MUCCIGROSSO & ROBERTS, LLP
*Attorneys for Defendant-Appellee*
  *Congregation of the Sacred Hearts –*
  *United States Province*
40 Exchange Place, 18th Floor
New York, New York 10005
(212) 482-0007

CP COUNSEL PRESS  (800) 4-APPEAL • (381882)

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Congregation of the Sacred Hearts – U.S. Province, a Massachusetts nonprofit corporation (hereinafter "the Congregation"), by and through its undersigned counsel, hereby certifies that the Congregation has no parent corporation and that no publicly held corporation owns ten percent (10%) or more of its stock.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT.................................................................. i

TABLE OF AUTHORITIES ..............................................................iv-viii

ISSUE PRESENTED ...........................................................................1

STATEMENT OF THE CASE..............................................................1

I. Appellant's Allegations and Claims ..........................................1

II. The Congregation's Lack of Contacs with New York.............4

III. Procedural Posture ....................................................................4

STANDARD OF REVIEW ..................................................................5

SUMMARY OF THE ARGUMENT .....................................................5

ARGUMENT .......................................................................................6

I.    THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN NOT TRASFERRING THIS CASE BECAUSE IT WAS NOT IN THE INTERESTS OF JUSTICE..............................................................6

II.   THE DISTRICT COURT PROPERLY DENIED TRANSFER BECAUSE THE CONGREGATION IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE NORTHERN DISTRICT SUCH THAT TRANSFER WOULD BE FUTILE......................................................11

A. The Congregation is Not Subject to General Jurisdiction in New York.......11

B. The Congregation is Not Subject to Specific Jurisdiction in New York.......12

C. Exercising Personal Jurisdiction Over the Congregation Would Not Comport with Due Process ...................................................21

III.   THE DISTRICT COURT PROPERLY DENIED TRANSFER
       BECAUSE APPELLANTS' ALLEGATIONS FAIL TO STATE
       A CLAIM UPON WHICH RELIEF CAN BE GRANTED SUCH
       THAT TRANSFER WOULD BE FUTILE. ......................................................23

CONCLUSION .........................................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Antic v. City of New York*, 273 F. Supp. 3d 445 (S.D.N.Y. 2017)..........................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................24

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 669
 (2d. Cir. 1999).....................................................................18

*Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307 (D. Conn. 2010)..........................26

*Beacon Enters., Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983)..............................22

*Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) ....................................16

*Branham v. ISI Alarms, Inc.*, No. 12-cv-1012, 2013 WL 4710588, at *4
 (E.D.N.Y. Aug. 30, 2013).......................................................17

*Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418 (S.D.N.Y. 2019)...........20

*C.Q. v. Estate of Rockefeller*, No. 20-CV-2205 (VSB), 2021 U.S. Dist.
 LEXIS 203563, at *10-11 (S.D.N.Y., Oct. 21, 2021) ........................................25

*Camacho v. Vanderbilt Univ.*, C.A. No. 18 Civ. 10694 (KPF),
 2019 U.S. Dist. LEXIS 209202 at *10 (S.D.N.Y., Dec. 4, 2019) ....................16

*Cardone v. Jiminy Peak, Inc.*, 667 N.Y.S.2d 82 (N.Y. App. Div. 1997) ..............15

*Chamberlain v. Peak*, 1109 AD2d 1109 (N.Y. App. Div. 1997) ...........................15

*Chau v. Donovan*, 357 F. Supp. 3d 276 (S.D.N.Y. 2019) ......................................23

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) .............13

*Cote v. Wadel, 796 F.2d 981 (7th Cir. 1986)* .........................................................8

*CutCo Indus. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ......................................17

*Daimler AG v. Bauman*, 571 U.S. 117, & n.19 (2014) ............................................12

*Daros v. Tokoyo*, No. 05CV775DLIVVP, 2005 WL 1229734, at *3
  (E.D.N.Y. May 23, 2005) ...................................................................................8

*Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861
  (2d Cir. 2015)....................................................................................................24

*Doe v. Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014)........................................ 18, 23

*Doe v. Poly Prep Country Day Sch.*, No. 20CV03628 (DG)(SJB),
  2021 WL 4310891, at *15 (E.D.N.Y. Sept. 22, 2021) ......................................25

*Doe 1 v. Congregation of Sacred Hearts of Jesus & Mary*,
  No. 21CV6865 (DLC), 2023 WL 185496 (S.D.N.Y. Jan. 13, 2023)...1, 4, 9, 10

*Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967) ...............................................7

*Ehrens v. Lutheran Church*, 385 F.3d 232 (2d Cir. 2004)............................... 19, 24

*Fay v. Troy City Sch. Dist.*, 197 A.D.3d 1423 (3d Dep't 2021) ..............................25

*Feldman v. L & M Mowing, Inc.*, No. 98 CV 4246SJ, 1999 WL 284983, at *3
  (E.D.N.Y. May 3, 1999) .....................................................................................8

*Fischbarg v. Doucet*, 9 N.Y.3d 375 (2007) ............................................................14

*Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374 (S.D.N.Y. 2021) ...............................22

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962).....7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ............12

*Grove Press, Inc. v. Angleton*, 649 F.2d 121(2d Cir. 1981) ...................................17

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ..................................12

*Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL) (AJP),
  1997 U.S. Dist. LEXIS 2065, at *45 (S.D.N.Y., Feb. 26, 1997) ......................19

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 224 F.R.D. 543
　　(S.D.N.Y.2004) .......................................................................................... 8

*In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219 (S.D.N.Y. 2019) ............... 22

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......................................... 11, 21

*Int'l Telecom, Inc. v. Generadora Electrica del Oriente, S.A.*,
　　2002 WL 1072230, at *2 (S.D.N.Y. May 28, 2002) ......................................... 18

*Johnson v. Ward*, 4 N.Y.3d 516 (2005) ................................................................. 14

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) ....................................... 14

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50
　　(2d Cir. 2012) ........................................................................................... 11, 14

*Louros v. Cyr*, 175 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................ 17

*Lynch v. Nat'l Prescription Adm'rs, Inc.*, 795 F. App'x 68, (2d Cir. 2020)… 25, 26

*Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990) .................................................... 18

*McGowan v. Smith*, 52 N.Y.2d 268, 419 N.E.2d 321, 437 N.Y.S.2d 643 (1981)..14

*McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377 (N.Y. 1967) ................ 22

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.*3d 560, 567-68
　　(2d Cir. 1996) ................................................................................................. 21

*Minnette v. Time Warner*, 997 F.2d 1023 (2d Cir. 1993) ........................................ 7

*Modern Indus. Firebrick Corp. v. Shenango Inc.*, No. 11-cv-959,
　　2012 U.S. Dist. LEXIS 87875, at *16 (W.D.N.Y. June 25, 2012) .................... 16

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102
　　(2d Cir. 2010) ................................................................................................... 5

*Porina v. Marward Shipping Co.*, 521 F.3d 122 (2d Cir. 2008) ............................ 21

vi

*Powers-Barnhard v. Butler*, 5:19-cv-01208 (BKS/ATB),
    2020 U.S. Dist. LEXIS 151997, *20-24 (N.D.N.Y., Aug. 21, 2020) ..............20

*Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522 (N.D.N.Y. 2006) ...................16

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006)..................22

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100
    (2d Cir. 2006)........................................................................................ 13, 15

*Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392 (2d Cir. 1992).............................6, 7, 8

*Swarna v. Al-Awadi*, 622 F.3d 123 (2d Cir. 2010) ......................................... 17, 23

*Tauza* v *Susquehanna Coal Co.*, 220 NY 259 (1917) ............................................15

*United States v. Pilcher*, 950 F.3d 39 (2d Cir. 2020) ..............................................5

*Velez v. City of New York*, 730 F.3d 128 (2d Cir. 2013) ........................................20

*Walden v. Lorcom Techs., Inc.*, No. 05-cv-3600, 2009 WL 799955 at *8,
    2009 U.S. Dist. LEXIS 24458, at *28-29 (E.D.N.Y. March 24, 2009) ...........18

*WIT Holding Corp. v. Klein*, 282 A.D.2d 527 (2d Dep't 2001) ............................26

*Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020).........................25

## Statutes

28 U.S.C. § 1391(b) ................................................................................................11

28 U.S.C. §1406(a) ........................................................................................... 6, 7, 8

New York's Child Victims Act, N.Y. C.P.L.R. § 214-g .........................................4

N.Y. C.P.L.R. § 302(a) ..................................................................6, 12, 13, 16-22

vii

**Rules**

Fed. R. App. P. 28(i) ................................................................6

Fed. R. Civ. P. 12(b)(6)................................................... 17, 20

## ISSUE PRESENTED

Whether the District Court properly exercised its discretion when it correctly determined that venue was improper in the Eastern District of New York ("District Court" or "Eastern District"); considered that Appellants had previously filed and had dismissed for lack of venue the identical claims in the Southern District of New York ("Southern District"); noted that Appellants had twice elected to proceed in a forum with only "tenuous" connections to their claims; observed that the purported transferee forum of the Northern District of New York ("Northern District") represented yet another forum where venue was doubtful; and concluded that transferring rather than dismissing the case would unfairly reward Appellants for their lack of diligence in choosing a proper forum.

## STATEMENT OF THE CASE

### I.    Appellants' Allegations and Claims

This appeal arises out of Plaintiffs-Appellants Jane Doe 1 and Jane Doe 2's ("Appellants") third attempt to forum-shop into New York in order to resurrect time-barred claims that nevertheless warranted dismissal on various bases.[1] Defendant-Appellee The Congregation of the Sacred Hearts – United States Province

---

[1] When the Congregation and other defendants moved to dismiss in the First Action, Appellants amended their complaint, the defendants renewed their motion, and the court dismissed the First Action for improper venue. *See Doe 1 v. Congregation of Sacred Hearts of Jesus & Mary*, No. 21CV6865 (DLC), 2023 WL 185496 (S.D.N.Y. Jan. 13, 2023) ("First Action").

1

("the Congregation")[2] is one of several defendant-appellees who moved for the dismissal of all claims set forth in the Complaint and Jury Demand in the underlying action, referred to herein as the "Second Action" ("Complaint" or "Compl.").

Appellants generally alleged that staff members at a Catholic boarding school in Massachusetts sexually abused them from approximately 1964 to 1970 and that incidents of abuse occurred primarily in Massachusetts but also in New York when Appellants were transported from their home in Brooklyn to the School. *See* Compl., ¶¶ 1-14, 16, 35, 66-113 (A010-11, A015, A020-A027)[3]. Appellants named as defendants the "Diocese of Fall River," a misnomer for appellee Roman Catholic Bishop of Fall River, a Corporation Sole ("RCBFR"); the Congregation; Sisters of Charity of Montreal ("the Montreal Sisters"); Sisters of Charity of Quebec; Missionary Oblates of Mary Immaculate Eastern Province ("Oblates"), and "Black and White Corporations 1-10" (collectively, "Appellees").[4] *Id.* (A009, A011).

---

[2] As in the First Action, Appellants named as a defendant in the Second Action "The Congregation of the Sacred Hearts of Jesus and Mary" with an alleged principal place of business and citizenship in Massachusetts. Compl., ¶ 11 (A011). Upon information and belief, Appellants intended to name the Congregation, a charitable corporation organized under the laws of Massachusetts with principal places of business in Fairhaven, Massachusetts and Honolulu, Hawaii.

[3] "A___" refers to Appellants' Appendix.

[4] Whereas Appellants' original complaint in the First Action named as a separate defendant the Sisters of the Sacred Hearts of Jesus and Mary ("SSHJM"), Appellants removed the SSHJM as a defendant in their amended complaint in the First Action. Appellants did not name the SSHJM in the Second Action but erroneously asserted that members of that entity, *i.e.*, the "Sacred Heart nuns" (*see, e.g.*, Compl., ¶ 11, (A011)), are agents of the Congregation. In fact, the two

2

Appellants alleged acts by a series of abusers, including Father James Porter, a priest serving under the RCBFR. *Id.* Appellants further alleged that the RCBFR, with the Congregation, had control over Sacred Heart Academy (at times herein, "the School") and other locations where Appellants were subjected to abuse. *Id.* at ¶ 66 (A020). Appellants allege that the Congregation had control over Father William Carroll, the head priest at the School, among others; and the Oblates over Father Arthur Craig and Father Alphonse Breault. *Id.* at ¶¶ 83; 103 (A023, A025).

Appellants claimed their mother viewed promotional material in the form of leaflets that represented the School as a proper boarding school and that individuals under Appellees' direction and control transported Appellants to and from the School. *Id.* at ¶¶ 18; 46-58 (A012, A017-A019). Appellants alleged that they were sexually molested in New York in connection with this transportation. *Id.*

Appellants further contended that Appellees are vicariously liable for the acts of their agent-perpetrators under the doctrine of respondeat superior, and directly liable for failing to prevent or report these actions. *Id.* at ¶ 127 (A029).

Appellants brought five causes of action against all Appellees for negligence, negligent training / supervision / retention, gross negligence, premises liability, and

---

entities are legally separate and the SSHJM, not the Congregation, owned and operated the School. Also, Appellants do not appeal the dismissal of the Oblates and no entity among "Black and White Corporations 1-10" is a party to this appeal.

breach of fiduciary duty. *Id.* at ¶¶ 114-205 (A027-A042). They purported to bring all claims under New York's Child Victims Act, N.Y. § 214-g. *Id.* at ¶ 1 (A010).

## II.    The Congregation's Lack of Contacts with New York

The Congregation is a charitable corporation organized under the laws of Massachusetts. Declaration of Stuart H.W. Ching ("Ching Decl.") at ¶ 5, (SA36)[5]. Its principal places of business are located in Fairhaven, Massachusetts and Honolulu, Hawaii. *Id.* at ¶ 7. It does not presently, nor has it ever maintained, a principal place of business in New York. *Id.* Beginning in or about 1928 the Congregation engaged in parish administration in Rochester, New York, which activity ceased in or about 1996. *Id.* at ¶ 8.

## III.    Procedural Posture

Appellants initiated the First Action in the Southern District in August of 2021. The complaint named as defendants the Congregation, the Sisters of Charity of Montreal, the RCBFR, and the SSHJM. *Id.* Appellants filed an Amended Complaint on April 19, 2022, which removed the SSHJM and added the Oblates as a defendant. *See* Southern District ECF #31 and #33. On January 13, 2023, the Southern District dismissed the First Action for improper venue. *See Doe 1 v. Congregation of Sacred Hearts of Jesus & Mary*, No. 21CV6865 (DLC), 2023 U.S. Dist. LEXIS 6905 (S.D.N.Y., Jan. 13, 2023).

---

[5] The Appellees' Supplemental Appendix is abbreviated herein as "SA __".

On July 11, 2023, Appellants filed the Complaint in the District Court against Appellees. Appellees moved to dismiss the Complaint and, on September 24, 2024, the District Court dismissed the claims against the Oblates as time-barred, and dismissed all the remaining claims for lack of venue. On September 25, 2024, judgment was entered in the District Court dismissing Appellants' claims. This appeal followed.

## STANDARD OF REVIEW

This Court reviews a district court's venue transfer decision for abuse of discretion. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). "A district court abuses its discretion when it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or when its decision . . . cannot be located within the range of permissible decisions." *United States v. Pilcher*, 950 F.3d 39, 41-42 (2d Cir. 2020) (internal quotation marks and alteration omitted).

## SUMMARY OF THE ARGUMENT

The District Court properly exercised its discretion in dismissing Appellants' claims because transferring the case would not have been in the interest of justice because it would have rewarded Appellants for their lack of diligence in choosing a proper forum. Appellants twice filed their claims in forums that lacked venue. They filed the second time in the Eastern District even though among the

5

remaining alternative forums the Eastern District bore the most tenuous connection to Appellants' claims. That is, they elected to file in the least viable forum and should not be "reward[ed]" for that decision. *See Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992).

In addition, the District Court properly exercised its discretion in not transferring the case because to do so would have been futile because the Northern District lacks personal jurisdiction over the Congregation. The Congregation is not subject to general jurisdiction in New York, Appellants claims do not establish specific jurisdiction over the Congregation pursuant to N.Y. C.P.L.R. § 302(a) and exercising personal jurisdiction over the Congregation would not comport with due process.

Finally, Appellants' allegations fail to state a claim upon which relief can be granted against the Congregation, which further supports dismissal instead of a transfer fraught with futility.

## ARGUMENT[6]

### I. THE DISTRICT COURT PROPERLY EXCERCISED ITS DISCRETION IN NOT TRANSFERRING THIS CASE BECAUSE IT WAS NOT IN THE INTERESTS OF JUSTICE.

Under 28 U.S.C. § 1406(a), a "district court of a district in which is filed a

---

[6] Pursuant to Fed. R. App. P. 28(i), the Congregation joins and incorporates herein the arguments set forth in the respective briefs of appellees RCBFR and the Montreal Sisters as applicable to the Congregation.

case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Under § 1406(a), "[w]hether dismissal or transfer is appropriate lies within the discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). Transfer should not be granted, however, where doing so "would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice." *Spar*, 956 F.2d at 394.

The purpose of 28 U.S.C § 1406 is "to avoid 'the injustice which ha[s] often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn.'" *Id.* (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962)). "Generally, in cases in which a § 1406 transfer has been permitted . . . the transfer has enabled the parties to surmount an obstacle, such as lack of jurisdiction, which would have precluded suit in the transferor district." *Id*.

Further, it is not "in the interest of justice" for a district court "'to allow [§ 1406] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district.'" *Spar, Inc.*, 956 F.2d at 394 (quoting *Dubin v. United States*, 380 F.2d 813, 816 n.5 (5th Cir. 1967)). Indeed, where a plaintiff failed to exercise

7

diligence, courts have found dismissal, rather than transfer, is appropriate under §
1406(a) even where dismissal would prevent any adjudication of a suit on the
merits. *See, e.g., In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 224
F.R.D. 543, 548 (S.D.N.Y.2004) ("Although the transfer statutes are meant to
serve plaintiffs who make erroneous guesses with regard to proper venue . . . they
do not extend to protect plaintiffs whose own failure to pursue their claims
diligently has resulted in a procedural bar.") (citation and quotation marks
omitted); *Spar, Inc.*, 956 F.2d at 394 (rejecting plaintiffs attempt "to avoid a statute
of limitations defect through a transfer of venue[]").  Dismissal is all the more
appropriate where a "plaintiff knowingly chooses the wrong forum[.]"  *Feldman v.
L & M Mowing, Inc.*, No. 98 CV 4246SJ, 1999 WL 284983, at *3 (E.D.N.Y. May
3, 1999) (citing *Spar, Inc.*, 956 F.2d at 394); *see also Daros v. Tokoyo*, No.
05CV775DLIVVP, 2005 WL 1229734, at *3 (E.D.N.Y. May 23, 2005) (finding
that "[i]t simply is not in the interest of justice for a court to indulge a plaintiff"
who failed to exercise proper diligence when he filed a case "in a district where
venue does not lie[]"); *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (finding
that dismissal due to plaintiff counsel's "obvious" and "elementary" mistake of
"filing her suit in the wrong district" was warranted notwithstanding the fact that
dismissal in that action meant plaintiff "is forever barred from bringing a suit
[which may have] great merit[]").

8

The District Court correctly found that it was not a proper venue for Appellants' claims. Appellants do not challenge that determination. Instead, Appellants attempt to justify their erroneous filing in the District Court by referring back to the decision dismissing the First Action, particularly the Southern District's dicta statement that Appellants' amended complaint in that action "indicates a strong connection to multiple federal judicial districts" other than the Southern District. *See Doe 1*, 2023 U.S. Dist. LEXIS 6905 at *7. Appellants essentially argue that they relied on the Southern District's decision in filing in the District Court only to be surprised at the determination that the Eastern District also lacked venue. Appellants go as far as to state that the Southern District expressly found that the Eastern District was a proper venue. *See* Appellants' Brief at 2 (". . . the district court . . . disagreed with *the prior judge's finding* that there was a strong connection and dismissed the case a second time, for lack of venue.") (emphasis supplied).

The Southern District did not make that finding. In fact, a close reading of the Southern District's analysis reveals that it fairly considered the Eastern District as the least likely candidate for proper venue among the several options available to Appellants. Consider the Southern District's comments on this issue:

> Plaintiffs have not made a <u>prima facie</u> showing that venue lies in the Southern District of New York. The focus of the plaintiffs' claims is on events that transpired at the Academy, St. Joseph's Orphanage, and the Provincial House, all of which were in the District of

9

Massachusetts. Defendants allegedly transported plaintiffs between these locations and the plaintiffs' home in Brooklyn, New York, which is in the Eastern District of New York. In addition to the events that occurred in Massachusetts, plaintiffs also outline, with some detail, incidents relevant to their claims that occurred in Maine, as well as in Essex, New York, which is in the Northern District of New York. Thus, the [amended complaint in the First Action] indicates a strong connection to multiple federal judicial districts, but the Southern District of New York is not one of them.

*Doe 1*, 2023 U.S. Dist. LEXIS 6905 at *7-8 (emphasis in original). These statements cannot reasonably be characterized as a finding that the Eastern District is a proper venue.

Rather, the Southern District distinguished between the events alleged to have occurred in the Eastern District, which focused on the transportation of Appellants, and the allegations of abuse outlined "with some detail" as having occurred in other districts. At the same time, the Southern District was careful not to make any findings as to the propriety of venue in any of these forums. It stated only that Appellants' claims "indicates" a connection to "multiple" other districts, neither finding venue in any district nor expressly including the Eastern District among those where a strong connection was indicated. *Id.*[7]

This discussion fairly advised Appellants that a district wherein the events plead in detail in the Complaint allegedly occurred – rather than the location of

---

[7] "Multiple." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/multiple; accessed 19 May, 2025 ("consisting of, including, or involving more than one").

10

their vague and conclusory allegations around transportation – represented a stronger candidate for proper venue.[8]  Whether for reasons of convenience or otherwise, when Appellants next filed in a district not among them, they failed to exercise proper diligence.

## II. THE DISTRICT COURT PROPERLY DENIED TRANSFER BECAUSE THE CONGREGATION IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE NORTHERN DISTRICT SUCH THAT TRANSFER WOULD BE FUTILE.[9]

### A. The Congregation is Not Subject to General Jurisdiction in New York.

General jurisdiction subjects a defendant to suit on any claims, whether or not they arise from the defendant's dealings in the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945).  "For a court to exercise general jurisdiction over a defendant," (1) "state law must authorize general jurisdiction"; and (2) "jurisdiction 'must comport with constitutional due process principles.'"  *Reich v. Lopez*, 858 F.3d 55, 62-63 (2d Cir. 2017) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)).  In *Daimler AG v. Bauman*, the Supreme Court explained that "[a]side from 'an exceptional case,' . . . a corporation is at home (and thus subject to general jurisdiction,

---

[8] Indeed, the holding of the Southern District's decision was that the alleged activity in the Southern District lacked sufficient detail and specificity to satisfy 28 U.S.C. § 1391(b).

[9] Though the District Court did not reach the issues addressed in Argument Sections II and III herein, the Congregation includes them for preservation purposes and to further support affirmance of the judgment of the District Court.

consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014)).

The Congregation is organized under the laws of, and has a principal place of business in, Massachusetts. There is no basis for departure from the general rule that requires either formal incorporation or a principal place of business within New York before a New York court may exercise general jurisdiction. Further, any of the Congregation's parish administration activities within New York ceased in or about 1996. In short, the Congregation lacks contacts with New York that due process requires under Supreme Court and Second Circuit precedent to permit the exercise of general jurisdiction in New York.

## B. The Congregation is Not Subject to Specific Jurisdiction in New York.

To establish specific jurisdiction, there must be an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and alteration omitted).

To determine whether specific jurisdiction exists over the Congregation a New York court first applies New York's long-arm statute, N.Y. C.P.L.R. § 302(a)

("§ 302(a)")[10].  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

Sub-sections (1)-(4) of § 302(a) are addressed below in turn.

*1.  § 302(a)(1)*

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing

---

[10] § 302(a) provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
4. owns, uses or possesses any real property situated within the state.

*McGowan v. Smith*, 52 N.Y.2d 268, 273, 419 N.E.2d 321, 437 N.Y.S.2d 643 (1981)).  A claim "'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,'" *id.* (quoting *McGowan*, 52 N.Y.2d at 272), or when "there is a substantial relationship between the transaction and the claim asserted," *id.* (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).  A "merely coincidental" connection is "insufficient to support jurisdiction." *Id.* (quoting *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005)).  "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York," *Licci*, 673 F.3d at 61 (2d Cir. 2012) (citations omitted), thereby "invoking the benefits and protections of its laws." *Id.* (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)).

As described above, the Congregation's activities within New York ceased in or about 1996.  Ching Decl., ¶ 8 (SA36).  These historic activities were limited to its former affiliation with two parishes in Rochester.  *Id.*  Rochester is approximately 337 miles and a six-hour drive from Brooklyn and in the opposite direction from Fairhaven, Massachusetts.  Appellants did not allege that their claims arose out of the Congregation's parish administration activities in Rochester, let alone the existence of "a substantial relationship" between those activities and the claims asserted.

14

*Sole Resort, S.A. de C.V.*, 450 F.3d at 103.

Instead, Appellants claimed that the Congregation "purposely availed itself to the citizens of New York by intentionally targeting and enrolling boarding students from the State of New York . . . ." Compl. at ¶ 17 (A011-A012). This attempt to connect the Congregation to New York through the alleged promotion of the School fails.

Appellants vaguely asserted that their "mother viewed leaflets and advertisements . . . in which the Fall River Diocese and [the Congregation] represented Sacred Hearts Academy as a proper boarding school for citizens of New York, including minor Plaintiffs." *Id.* at ¶ 18 (A012). However, even assuming it had operated the School, the dissemination of promotional materials that allegedly reached New York about the School would not suffice to establish personal jurisdiction over the Congregation. *See Cardone v. Jiminy Peak, Inc.*, 667 N.Y.S.2d 82 (N.Y. App. Div. 1997) (to assert jurisdiction over a foreign corporation its presence must be with "'a fair measure of permanence and continuity' . . . and solicitation of business alone will not suffice . . . .") (*Chamberlain v. Peak*, 1109 AD2d 1109 (N.Y. App. Div. 1997) (quoting *Tauza* v *Susquehanna Coal Co.*, 220 NY 259, 267 (1917)).[11]

---

[11] To the extent Appellants sought to premise jurisdiction on Appellees' alleged receipt of tuition payments on the Appellants' behalf (*see* Compl., ¶¶ 80, 177 (A022, A037)), this too fails because Appellants' claims "have no articulable nexus

*2. § 302(a)(2)*

Jurisdiction under Section 302(a)(2) "requires the assertion of a colorable cause of action for a tortious act." *Modern Indus. Firebrick Corp. v. Shenango Inc.*, No. 11-cv-959, 2012 U.S. Dist. LEXIS 87875, at *16 (W.D.N.Y. June 25, 2012). Section 302(a)(2) "has been narrowly construed to apply only when the defendant was actually physically present in New York when he performed the allegedly tortious act." *Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522, 531 (N.D.N.Y. 2006); *see also Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997).

Appellants failed to plausibly plead or establish that the Congregation performed any alleged tortious conduct while physically present in New York. *Id.* at 28 (explaining that section 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when [it] performed the wrongful act"). To the extent Appellants rely on the theory that individuals acted as agents of the Congregation in committing tortious actions against Appellants, this avenue is also unavailing. "For the purposes of personal jurisdiction, an agent is a person or entity that acts for the benefit of, and with the knowledge and consent of, the non-resident principal, and over which that principal exercises some

---

to [Defendants'] receipt of tuition payments." *See Camacho v. Vanderbilt Univ.*, C.A. No. 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202 at *10 (S.D.N.Y., Dec. 4, 2019) (defendant-university's receipt of tuition payments from New York students found insufficient to support personal jurisdiction).

control." *Branham v. ISI Alarms, Inc.*, No. 12-cv-1012, 2013 WL 4710588, at *4 (E.D.N.Y. Aug. 30, 2013) (citation and internal quotation marks omitted); *see also CutCo Indus. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986); *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981); *see also Louros v. Cyr*, 175 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) ("[A]n agency relationship only exists if the agent acts primarily for the benefit of the principal and not for himself.") (internal quotation omitted). Even assuming that the individuals who committed the alleged abusive acts against Appellants bore some connection to the Congregation, Appellants have not plausibly alleged that they acted primarily for the Congregation's benefit in the matter. Thus, § 302(a)(2) also fails as a basis for specific jurisdiction over the Congregation.

Further, the tortious activity alleged to have occurred within New York – sexual abuse in connection with transporting Appellants to or from Brooklyn to the School or other locations – could only have been performed by individual actors. Assuming, *arguendo*, its agents engaged in such activity, the Congregation could only be charged to have committed a tort within the state on a theory of vicarious liability or respondeat superior. But, as discussed further below in connection with the Congregation's arguments under Fed. R. Civ. P. 12(b)(6), that is not a recognized basis for assigning liability to a principal for an agent's sexual misconduct under New York law. *See Swarna v. Al-Awadi*, 622 F.3d 123, 144-45

17

(2d Cir. 2010), *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014).

### 3. § 302(a)(3)

"As a threshold matter, for jurisdiction pursuant to § 302(a)(3) the plaintiff must allege facts: (1) stating a colorable cause of action in tort and (2) showing injury was caused in New York." *Walden v. Lorcom Techs., Inc.*, No. 05-cv-3600, 2009 WL 799955 at *8, 2009 U.S. Dist. LEXIS 24458, at *28-29 (E.D.N.Y. March 24, 2009) (citation omitted).

In determining whether an injury to person or property in New York has been alleged, courts apply a "situs-of-injury test, which asks them to locate the original event which caused the injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 669, 791 (2d. Cir. 1999) ("[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff."); *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990). "In other words, the situs of injury is where the critical events associated with the dispute occurred." *Int'l Telecom, Inc. v. Generadora Electricia del Oriente, S.A.*, 2002 WL 1072230, at *2 (S.D.N.Y. May 28, 2002). Thus, the alleged incidences of sexual misconduct perpetrated upon Appellants outside New York cannot serve as the basis for this Court to exercise personal jurisdiction.

Moreover, "[f]or [§ 302(a)(3)] to be applicable, the defendant must be one

who either (i) regularly transacts business or 'derives substantial revenue from goods used or consumed or services rendered, in the state' or (ii) expects his act 'to have consequences in the state and derives substantial revenue from interstate or international commerce.'" *Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL) (AJP), 1997 U.S. Dist. LEXIS 2065, at *45 (S.D.N.Y., Feb. 26, 1997) (quoting § 302(a)(3)). Appellants have not alleged, much less plausibly, such facts as to the Congregation.

Further, any argument that the Congregation's alleged negligent training, supervision, or retention outside New York "caused" an injury within New York when Appellants were allegedly abused by Appellees' agents in New York is unavailing. To establish a claim for negligent hiring, supervision, or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) "that the tort-feasor and the defendant were in an employee-employer relationship"; (2) "that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence"; and (3) "that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations and internal quotation marks omitted). The alleged abuse within New York was not alleged to have occurred on the Congregation's premises

19

or with its chattels.[12]  S*ee Powers-Barnhard v. Butler*, 5:19-cv-01208 (BKS/ATB),

2020 U.S. Dist. LEXIS 151997, *20-24 (N.D.N.Y., Aug. 21, 2020) (finding the

court lacked personal jurisdiction under § 302(a)(3) because plaintiff did not plead

a colorable claim of negligent supervision against out-of-state defendant arising

from sexual misconduct off of defendant's premises).

### 4. § 302(a)(4)

A "court may exercise jurisdiction over a defendant if he owns, uses, or

possesses any property within New York that serves as the basis for plaintiffs'

cause of action." *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 436

(S.D.N.Y. 2019).

The Congregation does not own, use or possess any property within New

York, let alone property that could serve as the basis for any of Appellants' causes

of action.  *See* Ching Decl., ¶ 10 (SA36).  Thus, personal jurisdiction cannot be

---

[12] Appellants' failure to adequately plead negligent training/supervision/retention under New York law carries import with respect to the Congregation's arguments pursuant to Fed. R. Civ. P. 12(b)(6) below and are expressly incorporated therein. In that regard, Appellants' claim is independently deficient in that Appellants allege that the individual actors "engaged in the wrongful conduct while acting in the course and scope of their employment . . ." (Compl., ¶ 146), which precludes the tort under New York law.  *See Antic v. City of New York*, 273 F. Supp. 3d 445, 460 (S.D.N.Y. 2017) ("a negligent hiring, training, and supervising claim requires proof that the alleged wrongful conduct occurred 'outside the scope of [] employment'") (quoting *Velez v. City of New York*, 730 F.3d 128, 137 (2d Cir. 2013)).

exercised pursuant to § 302(a)(4).

### C. Exercising Personal Jurisdiction Over the Congregation Would Not Comport With Due Process.

"Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'" *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). The due process inquiry requires "a two-step analysis." *Id.* (citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.*3d 560, 567-68 (2d Cir. 1996)).

First, the court must decide whether the Congregation "has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction." *Id.* If so, the court proceeds to the second step and considers "whether the assertion of personal jurisdiction 'is reasonable under the circumstances of the particular case.'" *Id.* (quoting *Metro. Life*, 84 F.3d. at 568).

As discussed above, any of the Congregation's parish administration activities in New York occurred in the distant past and ceased in 1996 and bore no relationship to the alleged circumstances giving rise to Appellants' claims. Moreover, the Congregation did not own any academies, orphanages, seminaries, parishes, private residences, or retreat homes in New York. Ching Decl., ¶ 10 (SA36).

Accordingly, exercising personal jurisdiction over the Congregation in

New York would not comport with due process. *See, e.g.*, *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) ("Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause.").[13]

Thus, the Congregation is not subject to personal jurisdiction in the Northern District and transfer to that forum would be futile.

---

[13] Appellants' expressly based their contention that a New York court has personal jurisdiction over the Congregation on its alleged promotional activities. *See* Compl. ¶¶ 17-22 (A011-A013). Further, to the extent alleged car rides of Appellants to or from New York warrant jurisdictional analysis, they are insufficient to confer jurisdiction. First, allegations that "nuns and priests under Appellees' direction and control" and "Sacred Hearts Nuns," including a novice named "Lori," transported Appellants within New York (*see, e.g.*, Compl., ¶¶ 43, 48, 55 (A016-A018)) are too vague and conclusory to confer jurisdiction (*see In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 229 (S.D.N.Y. 2019) ("[A] plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'") (internal citations omitted)). Second, as discussed more fully above in connection with § 302(a)(2), Appellants failed to plausibly allege that the subject individuals acted within the scope of their purported agency (*i.e.* for the Congregation's benefit, with its consent, or under its control) in connection with the car rides. Third, isolated events of transportation do not constitute transaction of business sufficient to establish personal jurisdiction under § 302(a)(1) (*see e.g., See Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 415 (S.D.N.Y. 2021) (infrequent business trips to New York insufficient to create jurisdiction); *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 384 (N.Y. 1967)), which sub-section "is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983).

### III. THE DISTRICT COURT PROPERLY DENIED TRANSFER BECAUSE APPELLANTS' ALLEGATIONS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED SUCH THAT TRANSFER WOULD BE FUTILE.

As a threshold matter, Appellants alleged that named and unnamed individuals engaged in acts harmful to the Appellants and that this conduct can be imputed to the Congregation. Compl., ¶ 127 (A029). "To state claim [sic] for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Chau v. Donovan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019) (internal quotation marks omitted). "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Swarna v. Al-Awadi*, 622 F.3d 123, 144-45 (2d Cir. 2010) (internal quotation marks omitted); *see also Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) ("No decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault."). Accordingly, it is clear that to the extent Appellants sought to hold the

23

Congregation vicariously liable for acts of its purported agents, the Complaint lacks the requisite facts and Appellants' claims would be subject to dismissal.

Next, with respect to allegations that the Congregation engaged in tortious conduct in New York, those allegations were insufficiently plead and would also require dismissal. A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Appellants' allegations that "nuns and priests under [Appellees'] direction and control" and "Sacred Hearts Nuns," including a novice named "Lori," transported them within New York (*see, e.g.*, Compl., ¶¶ 43, 48, 55 (A016-A018)) were not plausible. Moreover, as discussed above, Appellants' claim for negligent training / supervision / retention required "that the tort was committed on the employer's premises or with the employer's chattels," *Ehrens*, 385 F.3d at 235. Appellants did not allege as much, and the Congregation does not own property in New York. *See* Ching Decl., ¶ 10 (SA36).

Appellants' claim for premises liability would warrant threshold treatment as well. Under New York law, claims are duplicative when both "arise from the same facts and seek the identical damages for each alleged breach." *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (internal quotation marks omitted). Appellants' claim for premises liability is essentially

indistinguishable from their claims for negligence, negligent training / supervision / retention and gross negligence. For all of these claims, Appellants essentially alleged that (1) Appellees breached their duty to Appellants despite the fact that their injuries were reasonably foreseeable, and (2) the sexual abuse of Appellants occurred as a result. *See* Compl., ¶¶ 117, 121, 127, 130-132, 135, 188 (A027-A030, A039). In this way, these claims all concerned the same core facts and same injury and warrant dismissal as duplicative. *See C.Q. v. Estate of Rockefeller*, No. 20-CV-2205 (VSB), 2021 U.S. Dist. LEXIS 203563, at \*10-11 (S.D.N.Y., Oct. 21, 2021) (dismissing premises liability claim as duplicative of negligence-based claims arising from sexual assault); *PC-41 Doe v. Poly Prep Country Day Sch.*, No. 20CV03628 (DG)(SJB), 2021 WL 4310891, at \*15 (E.D.N.Y. Sept. 22, 2021) ("And in similar [Child Victim Act] actions, both NIED and premises liability claims have been dismissed as duplicative of other tort claims." (collecting cases)); *Fay v. Troy City Sch. Dist.*, 197 A.D.3d 1423 (3d Dep't 2021) (same).

Finally, Appellants failed to state a claim for breach of fiduciary duty. "To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (internal quotation marks omitted). "A fiduciary relationship exists between two persons when one of

25

them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Lynch v. Nat'l Prescription Adm'rs, Inc.*, 795 F. App'x 68, 69 (2d Cir. 2020) (internal quotation marks omitted); *see also WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529 (2d Dep't 2001) ("A fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge").

As the source of a fiduciary duty, Appellants contended that they "had a special relationship with [Appellees], as they were boarding school students at an academy owned, maintained, controlled, and supervised by the [RCBFR] and [the Congregation]." Compl., ¶ 193 (A039). Appellants failed to plead facts tending to show "a relationship of higher trust" in which any Appellee was "under a duty to act for or to give advice for the benefit of" [p]laintiff." *Lynch*, 795 F. App'x at 69; *see also Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307, 330 (D. Conn. 2010) (noting that no "state or federal court within the Second Circuit [has held] or even suggest[ed] that a secondary school — public or private, boarding or day-session — or its employees owe a fiduciary duty to its students.").

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the judgment entered in the District Court on September 25, 2025.

THE CONGREGATION OF THE
SACRED HEARTS – UNITED
STATES PROVINCE,

By its attorneys,


/s/ Sanford N. Talkin
Sanford N. Talkin
Talkin, Muccigrosso & Roberts, LLP
40 Exchange Place, 18th Floor
New York, NY 10005
Tel:  (212) 482-0007
Fax: (212) 482-1303
samt@talkinlaw.com

Dated:  New York, New York
        May 27, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7) and Local Rule 32.1(a)(4) because this brief contains 6468

words, excluding the parts of the brief exempted by Fed. R. App. P.

32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a proportionally spaced

typeface using Microsoft Word version 2408 in a 14-point Times New

Roman font.

*/s/ Sanford N. Talkin*
Sanford N. Talkin

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 27, 2025 the foregoing document was served on all

parties or their counsel of record through the Appellate Case Management System.

*/s/ Sanford N. Talkin*_____
Sanford N. Talkin
