# 24-2940-cv

## United States Court of Appeals
## for the Second Circuit

JANE DOE 2 AND JANE DOE 1,

*Plaintiffs-Appellants,*

*v.*

THE CONGREGATION OF THE SACRED HEARTS OF JESUS AND MARY,
ROMAN CATHOLIC DIOCESE OF FALL RIVER, SISTERS OF CHARITY OF
MONTREAL, SISTERS OF CHARITY OF QUEBEC, MISSIONARY OBLATES
OF MARY IMMACULATE EASTERN PROVINCE,

*Defendants-Appellees,*

BLACK AND WHITE CORPORATIONS 1-10,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK,
NO. 1:23-CV-05294, HON. RACHEL P. KOVNER

## BRIEF FOR DEFENDANT-APPELLEE
## SISTERS OF CHARITY OF QUEBEC

Andrew M. Lankler
Eric DuPont
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 408-2500

*Attorneys for Defendant-Appellee*
*Sisters of Charity of Quebec*

## **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Sisters of Charity of Quebec states that it has no parent corporation, that no publicly held corporation owns 10% or more of the stock of Defendant-Appellee Sisters of Charity of Quebec, and that Defendant-Appellee Sisters of Charity of Quebec's corporate citizenship is Quebec, Canada.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... ii

PRELIMINARY STATEMENT ..............................................................1

JURISDICTIONAL STATEMENT .........................................................3

ISSUES PRESENTED ...........................................................................4

STATEMENT OF THE CASE ................................................................4

    **I.** Factual Background ....................................................... 4

    **II.** Procedural Background ................................................... 5

SUMMARY OF ARGUMENT ...............................................................9

STANDARD OF REVIEW ..................................................................10

ARGUMENT .....................................................................................11

    **I.** **The District Court Did Not Abuse Its Discretion When Dismissing Plaintiffs' Complaint** ........................................................ 11

    **II.** **Transfer to the Northern District of New York Cannot Meet the Interest of Justice Because the Statute of Limitations Bars Plaintiffs' Claims Against SCQ in Any New York Venue** ..................................... 17

CONCLUSION ...................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACEquip Ltd. v. Am. Eng'g Corp.*,
315 F.3d 151 (2d Cir. 2003)....................................................................................................18

*Amaya v. Garden City Irrigation, Inc.*,
645 F. Supp. 2d 116 (E.D.N.Y. 2009) ....................................................................................25

*Blakely v. Lew*,
607 F. App'x 15 (2d Cir. 2015) ..............................................................................................14

*Booking v. Gen. Star Mgmt. Co.*,
254 F.3d 414 (2d Cir. 2001)....................................................................................................18

*Bumpus v. New York City Transit Auth.*,
66 A.D.3d 26 (2d. Dep't 2009).....................................................................................21, 22, 23

*Buran v. Coupal*,
661 N.E.2d 978 (N.Y. 1995)....................................................................................................24

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
543 F. App'x 72 (2d Cir. 2013) ..............................................................................................18

*Connell v. Hayden*,
83 A.D.2d 30 (2d Dep't 1981)............................................................................................24, 25

*Corke v. Sameiet M. S. Song of Norway*,
572 F.2d 77 (2d Cir. 1978)................................................................................................16, 17

*Cotto v. City of New York*,
803 F. App'x 500 (2d Cir. 2020) ............................................................................................22

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006)......................................................................................................11

*DaCosta v. City of New York*,
296 F. Supp. 3d 569 (E.D.N.Y. 2017) ..............................................................................21, 24

*Daniel v. Am. Bd. of Emergency Med.*,
428 F.3d 408 (2d Cir. 2005)..........................................................................................11, 12, 18

ii

*Ericksen v. County of Suffolk*,
    154 A.D.3d 721 (2d Dep't 2017) ........................................................................................... 24

*Esseadi v. U.S. Dep't of Just.*,
    160 F. App'x 47 (2d Cir. 2005) ............................................................................................ 18

*Goldlawr, Inc. v. Heiman*,
    369 U.S. 463 (1962) ............................................................................................................... 16

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013) ................................................................................................. 21

*Holloway v. Holy*,
    537 F. Supp. 3d 502 (S.D.N.Y. 2021) .............................................................................. 2, 13

*In re Tingling*,
    990 F.3d 304 (2d Cir. 2021) ................................................................................................. 18

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001) ................................................................................................... 16

*Jenkins Brick Co. v. Bremer*,
    321 F.3d 1366 (11th Cir. 2003) ........................................................................................... 12

*McCall v. Pataki*,
    232 F.3d 321 (2d Cir. 2000) ................................................................................................. 18

*Minette v. Time Warner*,
    997 F.2d 1023 (2d Cir. 1993) ............................................................................................... 17

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010) ............................................................................................ 10, 11

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005) ................................................................................................. 16

*Phillips v. Seiter*,
    173 F.3d 609 (7th Cir. 1999) ............................................................................................... 18

*Prospect Cap. Corp. v. Bender*,
    No. 09-CV-826, 2009 WL 4907121 (S.D.N.Y. Dec 21, 2009) ............................................. 12

*Roco G.C. Corp. v. Bridge View Tower, LLC*,
    166 A.D.3d 1031 (2d Dep't 2018) ........................................................................................ 24

iii

*Spar, Inc. v. Info. Res., Inc.*,
    956 F.2d 392 (2d Cir. 1992).............................................................................................14

*United States v. Gomez*,
    877 F.3d 76 (2d Cir. 2017)..............................................................................................18

**STATUTES**

28 U.S.C. § 1291.............................................................................................................................3

28 U.S.C. § 1391(b)(2) ................................................................................................................12

28 U.S.C. § 1406(a) .................................................................................................................11, 18

Me. Stat. tit. 14 § 752-c (2021)......................................................................................................7

NY CPLR § 203...............................................................................................................23, 24, 25

NY CPLR § 214-g .................................................................................................1, 2, 5, 9, 19

NY CPLR § 306–b........................................................................................................................21

NY CPLR § 1024..............................................................................................................19, 21, 24

NY CPLR § 3025(b) .....................................................................................................................23

Fed. R. App. P. 4(a)(1)....................................................................................................................3

Fed. Rule Civ. P. 12................................................................................................................1, 8

Fed. Rule Civ. P. 15......................................................................................................................19

## PRELIMINARY STATEMENT

Defendant-Appellee Sisters of Charity of Quebec ("SCQ") respectfully submits this brief in opposition to Plaintiffs-Appellants Jane Doe 1 and Jane Doe 2's ("Plaintiffs") appeal of the Memorandum and Order of the United States District Court for the Eastern District of New York (Hon. Rachel P. Kovner), entered on September 24, 2024 (the "Order"), insofar as it dismissed Plaintiffs' complaint (the "Complaint") against defendants the Congregation of the Sacred Hearts of Jesus and Mary, Roman Catholic Diocese of Fall River, Sisters of Charity of Montreal, and SCQ without prejudice pursuant to Rule 12(b)(3) and declined to transfer those claims the Northern District of New York.[1]

Plaintiffs argue that the District Court abused its discretion by deciding not to transfer the case to the Northern District of New York where venue, they say, would lie. Because Plaintiffs desire to file their claims in New York under the Child Victims Act ("CVA") and because they cannot now bring a new action without violating the statute of limitations, they must seek a reversal of the lower court's ruling and a mandated transfer of venue to the Northern District.

---

[1] Plaintiffs do not appeal the District Court's dismissal of their Complaint against the Missionary Oblates of Mary Immaculate Eastern Province ("Oblates"), which was given with prejudice upon the finding that Plaintiffs' claims against the Oblates are time-barred. The District Court reached that issue as to the Oblates because it "waived any venue argument." A051. SCQ raised similar statute-of-limitations arguments, but the District Court did not rule on them, presumably because the venue issue disposed of the claims as to SCQ as it did the other defendants who raised it.

The District Court's ruling, denying Plaintiffs' efforts to explore a *third* New York District Court as a potential venue for their claims, was not against the "interest of justice." While the only appropriate venue in a sexual abuse claim is "the district where the abuse occurred," *Holloway v. Holy See*, 537 F. Supp. 3d 502, 505 (S.D.N.Y. 2021), Plaintiffs have now twice chosen to file their claims in New York federal districts in which they do not clearly allege they suffered abuse. As to their third forum selection, it is indeed "far from clear that venue would lie in plaintiffs' requested forum of the Northern District of New York." A050. That finding alone is sufficient to justify the lower court's decision to deny transfer. But even if venue were proper in the Northern District, it was certainly not an abuse of the District Court's discretion to decide that awarding Plaintiffs another chance at filing their claims—when they have so far inexplicably insisted on filing in "judicial districts with only tenuous connections to the claims," A050—is not in the interest of justice. The District Court's Order should be affirmed on its own terms.

Even assuming, as Plaintiffs argue, that the District Court's reasoning shows an error of law such that its decision to deny transfer qualifies as an abuse of discretion, transfer of the claims as to SCQ would nonetheless offend justice because those claims are plainly time-barred. SCQ was named a defendant and served with notice long after the expiration of the limitations period for Child Victims Act claims

2

and Plaintiffs cannot establish relation back to a timely filing. Plaintiffs have not, as they argued below, proceeded against SCQ as if against a Doe defendant and they cannot show (nor did they even argue) that relation back of their claims would otherwise pass the applicable state-law test in NY CPLR 203. SCQ has now briefed this issue before two district courts, where each court dismissed the claims on SCQ's venue arguments before reaching the timeliness question. It would be inequitable to send SCQ and the same issue to a third venue. Indeed, the "interest of justice" would be offended by such a transfer principally because of the inefficiency it would create for the federal courts. Plaintiffs' claims as to SCQ are futile in any venue, and it is against the interest of justice to require yet another New York federal court to hear that issue. The District Court's Order should be affirmed on that independent ground.

## JURISDICTIONAL STATEMENT

On October 24, 2024, Plaintiffs filed a timely notice of appeal from the District Court's judgment entered on September 24, 2024. *See* A059; Fed. R. App. P. 4(a)(1). This Court has jurisdiction over Plaintiffs' appeal pursuant to 28 U.S.C. § 1291.

3

## ISSUES PRESENTED

1. Whether the District Court properly exercised its discretion when rejecting Plaintiffs' request to transfer their claims to the Northern District of New York, upon a finding that such transfer would not serve the interest of justice.

2. Whether the District Court declining to transfer Plaintiffs' claims is not against the interest of justice for the reason, not discussed by the District Court, that Plaintiffs' claims against SCQ are time-barred in any New York venue.

## STATEMENT OF THE CASE

### I.  Factual Background

Plaintiffs' Complaint primarily focuses on abuse suffered by Plaintiffs in Massachusetts. *See* A009-A042. Specifically, in 1964, Plaintiffs were enrolled in a Catholic boarding school in Fairhaven, Massachusetts and were subjected to sexual abuses at the hands of priests, nuns, and religious leaders over a six-year period. *See* A10, A13, A17. While enrolled at this school, Plaintiffs were transported to various orphanages, private residences, clergy-owned retreat homes, and seminaries in New York, Massachusetts, and Maine where further abuses occurred. A027. Plaintiffs alleged that one such abuse occurred at an orphanage run by "Grey Nuns" in Fairhaven, Massachusetts. A015, A020, A023. Plaintiffs defined "Grey Nuns" by

4

lumping SCQ together with Sisters of Charity of Montreal, *see* A011, and did so despite these being two different orders of nuns.

Beyond a conclusory allegation that the "Grey Nuns" operated the orphanage at issue in this case, *see* A015, the Complaint does not even suggest that SCQ was affiliated with any orphanages or schools in Fairhaven, Massachusetts, or any institutions in New York. Indeed, Plaintiffs' own exhibits confirmed that, while SCQ has been affiliated with other orphanages in Massachusetts, none were in Fairhaven. *See* Dkt. 1 at Exhibit 4, pp. 1, 3.

## II.     Procedural Background

Plaintiffs first filed their claims in the Southern District of New York, in a case captioned *Doe 1 et al., v. Congregation of the Sacred Hearts of Jesus and Mary et al.*, Case No. 1:21-cv-06865, before District Judge Denise Cote (the "SDNY Action"). *See* SDNY Action at Dkt. 1. The SDNY Action was filed on August 14, 2021, the final day of the extended statute of limitations period for claims revived under New York's Child Victims Act. N.Y. CPLR § 214-g. Plaintiffs did not name SCQ as a defendant when first filing the SDNY Action and their original complaint does not make any reference to SCQ. *See* SDNY Action at Dkt 1.

SCQ did not learn of the SDNY Action until January 27, 2022, 166 days after the date of filing and the same 166 days after the extended CVA statute of limitations

5

had lapsed, when Plaintiffs reached out to SCQ after receiving an ecclesiastical directory from counsel for Sisters of Charity of Montreal in December 2021. *See* Dkt. 40-3; Dkt. 40-4. Despite contacting SCQ on January 27, Plaintiffs waited until April 20, 2022, over eight months (249 days) after filing the original complaint in the SDNY Action, to file an amended complaint, naming SCQ for the first time. *See* SDNY Action at Dkt. 33.

On January 13, 2023, Judge Cote dismissed the SDNY Action for lack of venue and found that "there [was] no indication that interests of justice mandate[d] transferring the case to another district." SDNY Action at Dkt. 100, pp. 9-10. While concluding that Plaintiffs had not stated sufficient ties to the Southern District of New York to make venue appropriate, Judge Cote observed that the "focus" of Plaintiffs' claims is on events that occurred in Massachusetts and, in passing, noted that Defendants "allegedly transported plaintiffs between these locations and the plaintiffs' home in . . . the Eastern District of New York." *Id.* at 7. She then moved beyond the "focus" of the claims and added that "[i]n addition to the events that occurred in Massachusetts, plaintiffs also outline . . . incidents relevant to their claims that occurred in Maine, as well as in . . . the Northern District of New York." *Id.* "Thus," Judge Cote concluded, "the FAC indicates a strong connection to multiple federal judicial districts, but the Southern District of New York is not one

6

of them." *Id.* The decision merely noted that even the New York location arguably relevant to the "focus" events of alleged abuse in Massachusetts was in the *Eastern*, not Southern, District of New York. Nowhere did Judge Cote's decision recommend that Plaintiffs file in the Eastern District of New York or even suggest that venue would be appropriate there. Instead, the decision strongly suggests that Massachusetts, as the "focus" of the claims, is an appropriate venue, and even goes so far as to decide that the interest of justice does not demand transfer because Plaintiffs' claims remain, according to Plaintiffs themselves, available in Maine where the other "incidents relevant to their claims" occurred. *Id*. at 7, 9 ("[T]he plaintiffs suggest that they would be able to refile their claims in Maine because actions based on the sexual abuse of minors may be commenced in Maine at any time, regardless of any otherwise applicable statutes of limitation. *See* Me. Stat. tit. 14 § 752-c (2021).").

Rather than file their new claim in Maine, or even in the Northern District of New York, on July 11, 2023 Plaintiffs filed the claims at issue here in the Eastern District of New York (the "EDNY Action"). *See* A009. Despite waiting close to six months after dismissal of the SDNY Action to file the EDNY Action, Plaintiffs' new complaint was almost identical to the amended complaint filed in the SDNY Action. *Compare* SDNY Action at Dkt. 33 *with* A009-A043. Accordingly, the defendants in

7

the EDNY Action filed motions to dismiss. All defendants, save the Oblates, moved to dismiss on multiple grounds, including lack of venue. The Oblates moved to dismiss solely pursuant to Rule 12(b)(6), arguing that Plaintiffs' claims against them were time-barred. *See* Dkt. 41.

On September 24, 2024, the District Court granted the motions to dismiss. As to all defendants, except the Oblates[2], the District Court found Plaintiffs failed to make a *prima facie* showing that venue was proper in the Eastern District of New York because the Complaint outlined events that occurred in the District of Massachusetts and the Northern District of New York, but no incident of abuse that occurred in the Eastern District of New York. *See* A046-A049. The District Court declined to transfer the case to the Northern District of New York, in part because venue is not certain to lie there, given that the events in the Complaint primarily occurred in Massachusetts, except for northern New York conduct relating primarily to the Oblates, which is now no longer relevant to the case as the claims against it

---

[2] As to the Oblates, the District Court granted its motion to dismiss, finding Plaintiffs' claims were untimely. Specifically, Plaintiffs claims could only have been timely had they been made within the CVA's two-year revival period or if they related back to a timely filed action. As with SCQ, Plaintiffs only added the Oblates in their amended complaint in the SDNY Action, eight months after the original timely complaint. SDNY Action at Dkt. 33. The District Court found Plaintiffs' claims against the Oblates did not relate back to their original claims in part because the "Oblates d[id] not share an identity of interest with any of the defendants in the timely complaint." A054.

8

are dismissed with prejudice. *See* A050. The District Court further found that "plaintiffs' request to transfer the case to the Northern District—after twice filing in other New York judicial districts with only tenuous connections to the claims at issue—smacks of forum shopping." A050-A051.

## SUMMARY OF ARGUMENT

Plaintiffs cannot climb the high hurdle of showing that the District Court's decision not to transfer the claims to the Northern District of New York so offends the "interest of justice" that it amounts to an abuse of discretion reversible by this Court.

To the contrary, the lower court's decision is well-reasoned. With the Oblates removed, venue would be improper in the Northern District of New York and the District Court was well within its discretion to refuse a transfer to a forum where venue is unlikely to lie. Even while Plaintiffs may *wish* to bring their claims under the CVA, the statute does not assure New York residents will find proper venue for their claims in New York's federal courts. The lower court's decision is also proportional to Plaintiffs' failure to identify a sensible forum for their claims of abuse, as they have now chosen repeat filings in the New York City-based venues where they do not even allege they suffered that abuse. The interest of justice embraces only so much tolerance for a plaintiff's lack of diligence in identifying the

9

proper forum for its claims and does not require the courts to save claimants from the risks they take when strategically selecting venue.

And as to SCQ, uniquely among the remaining defendants, transfer to yet another judicial district in New York could never be in the interest of justice because the claims are time-barred and will not survive the pleadings stage there. For many of the same sound reasons the District Court applied to find that dismissal with prejudice was proper as to the Oblates, that same outcome is warranted for SCQ. Specifically, SCQ was added to and noticed of Plaintiffs' action long after the CVA's revived limitations period lapsed. And the circumstances do not allow relation back under the framework Plaintiffs have asserted permits it. Plaintiffs *say* they have pursued a Doe defendant that they later determined to be SCQ. But their pleadings tell a different story: their first complaint names Doe defendants, but does not describe the actions of any Doe, and Plaintiffs instead later alleged that SCQ is an appropriate *additional* defendant. And even under the proper relation-back rule— an argument Plaintiffs waived by not raising it as to SCQ—the claims against SCQ do not meet the test for relating back to a timely action.

## STANDARD OF REVIEW

A district court's denial of a motion to transfer venue is reviewed for abuse of discretion. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102,

112 (2d Cir. 2010). District courts may exercise their discretion to transfer venue "in the interest of justice . . . to any district or division in which [the case] could have been brought." 28 U.S.C. § 1406(a). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005).

> Among the factors to be considered in determining whether to grant a motion to transfer venue "are, *inter alia:* (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties."

*New York Marine & Gen. Ins. Co.*, 599 F.3d at 112 (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)).

## ARGUMENT

### I. The District Court Did Not Abuse Its Discretion When Dismissing Plaintiffs' Complaint

The District Court properly, and reasonably, concluded that a transfer of Plaintiffs' claims to the Northern District of New York was not required in the interest of justice, *first*, because the claims are not certain to find venue in that judicial district and, *second*, because Plaintiffs have not exercised reasonable diligence in finding the right forum for their claims, instead selecting two venues

11

that have limited connection to the harms they allege in a manner that "smacks of forum shopping." A050-51. *Last*, Plaintiffs raise no argument—and can point to no law—that supports finding that decision an abuse of the lower court's "considerable discretion" when it comes to transfer. *Daniel*, 428 F.3d at 435.

*First*, the District Court was rightly wary that venue would lie even in the Northern District of New York. The venue statute allows an action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). The "substantial part" of the events must be "significant" to the claims, and therefore must bear a "close nexus to the wrong." *Daniel*, 428 F.3d at 433 (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003)). And as the District Court correctly observed when dismissing Plaintiffs' claims for lack of venue in the Eastern District, "venue must be proper as to each defendant and each claim." A047 (citing *Prospect Cap. Corp. v. Bender*, No. 09-CV-826, 2009 WL 4907121, at *2 (S.D.N.Y. Dec 21, 2009)).

As the lower court explained, the sexual abuse Plaintiffs allege they suffered in the Northern District of New York almost exclusively relates to the Oblates, which is now dismissed from the matter with prejudice. A050 (citing relevant Complaint paragraphs raising Northern District of New York allegations related to the Oblates).

12

On appeal, Plaintiffs stress that any sexual abuse they suffered in the Northern District of New York is, by itself, sufficiently "substantial" to establish proper venue there. That point is irrelevant without regard to its merits, since the claims against the remaining Defendants simply do not include direct abuse in the Northern District of New York. The only portion of the Essex, New York allegations that relates to SCQ (graciously construing Plaintiffs' claims for purposes of this analysis, as they are a morass of allegations against "Grey Nuns" that do not put SCQ on proper notice of its alleged acts) is instead that "Jane Doe 1 and Jane Doe 2 were taken to the Oblates' Seminary and Mission House in Essex, New York on weekend trips by Sacred Hearts Nuns and Grey Nuns at least ten (10) times." A017 at ¶46. But that claim is only that "Grey Nuns" transported Plaintiffs to a location where they were abused by another, now-dismissed, defendant. The focus of the claims against "Grey Nuns," and thus the substantial events relevant to the venue analysis as to them, is on the direct allegations of sexual abuse performed by those "Grey Nuns" in Massachusetts. A026-27 at ¶¶ 109-113. *See Holloway*, 537 F. Supp. 3d at 505 ("The law is clear that venue in sexual abuse cases lies in the district where the abuse occurred."). As the lower court observed when dismissing for lack of venue in the Eastern District, the allegations that certain defendants transported Plaintiffs to places where they were then abused "does not have a 'close nexus' with any of their

13

claims." A049. Venue therefore does not lie in the Northern District of New York as an individual analysis concerning SCQ. The District Court's decision that transfer of venue was not in the interest of justice, insofar as it was partly informed by its suspicion that venue will not lie in the Northern District of New York, is sound, and certainly not an abuse of discretion.

*Second*, Plaintiffs either evinced a lack of diligence in identifying the proper venue or were, indeed, forum shopping. After filing their claims in the Southern District of New York and receiving a rebuke from the district court there, which concluded that venue was not proper because the "focus" of the claims was in other venues where they allege sexual abuse occurred, Plaintiffs re-filed in the Eastern District, despite that, again, they allege no abuse there. That decision either constitutes a lack of diligence or it reflects a knowing attempt to choose a New York City-based federal venue for access to its particular judges and jury pool. Either way, the District Court properly exercised its discretion in declining to transfer the case to yet another New York federal venue so as not to either reward Plaintiffs for their lack of diligence or protect them from the consequence of their own strategic choice to seek out an advantageous venue without assurance of another filing opportunity. A050 (citing *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) and *Blakely v. Lew*, 607 F. App'x 15, 18 (2d Cir. 2015) for the proposition that the venue

14

statute allows a plaintiff to choose a preferred venue, but does not guarantee unlimited opportunities via transfer and does not promote forum shopping).

Plaintiffs try to cast their second venue choice here (the Eastern District of New York) as supported by the district court for the Southern District of New York's "finding that there was a strong connection" to the Eastern District, and the District Court's decision below that venue does not lie in the Eastern District as "disagreement" with that "finding." Brief of Plaintiffs-Appellants at 1-2. But the first court never so found. Instead, it found that the "focus" of the claims related to "events that transpired" in the District of Massachusetts and it merely observed that the only New York geography even somewhat relevant to those "focus" events was the Eastern District, not Southern, where Plaintiffs were allegedly transported from their home. SDNY Action at Dkt. 100, pp. 7-8. Plaintiffs were not led to filing in the Eastern District of New York by a judicial "finding" in another court—they chose it, despite knowing that they do not allege harms suffered there. And Plaintiffs do not even appear to believe the District Court's finding that venue does not lie in the Eastern District is without merit, as they have not appealed that aspect of the Order.

According to Plaintiffs, they cannot have been "forum shopping" because their venue hopping is not premised on finding a different body of law than the one they set out under. Brief of Plaintiffs-Appellants at 12-13. But that misses that forum

shopping can take many different forms and can be motivated by a host of tactical considerations having nothing to do with the applicable body of law. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (identifying forum shopping motivations as including "habitual generosity of juries in the . . . forum district," "the plaintiff's popularity or the defendant's unpopularity in the region," and "the inconvenience and expense to the defendant resulting from litigation in that forum") (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001)). To the extent the lower court's decision not to transfer venue was based on its view that Plaintiffs are forum shopping, Plaintiffs have not explained away that concern or rendered such a finding erroneous.

*Last*, Plaintiffs have surfaced no case finding that a federal district court *abused its discretion* in deciding not to transfer a case in the interest of justice. Their lead case, and the one they wish the Court to follow in outcome, is this Court's 1978 decision in *Corke v. Sameiet M. S. Song of Norway*. 572 F.2d 77 (2d Cir. 1978). In that case, the Second Circuit ruled that a district court had erred on the law when concluding it lacked authority to order transfer of a case because it did not have jurisdiction over the parties. *Id.* at 78 (finding that the district court misread *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962)). This Court then directly mandated transfer of the case only for efficiency, suggesting the formal course would

16

otherwise have been to remand the matter for application of the district judge's own discretion to the question of transfer. *See id.* at 81 ("Because transfer is so clearly warranted by the facts at hand, it is unnecessary to waste the district court's valuable time by requiring a hearing on transferability. We therefore reverse and remand with directions to transfer the action to the district court for the Southern District of Florida."). *Minette v. Time Warner*, which Plaintiffs also cite, involved review of a district judge's decision to dismiss a *pro se* action. 997 F.2d 1023, 1026 (2d Cir. 1993). There, the Second Circuit found the district court's denial of a transfer request to the Southern District of New York was proper; it then transferred the matter to a different venue, the Eastern District of Virginia, pursuant to its own discretionary authority, again "to save judicial time." *Id.* at 1027. Plaintiffs have identified no precedent that finds an abuse of discretion by a district judge in any transfer-of-venue context, let alone one that counsels in favor of finding abuse here. The District Court's decision was proper and it should be affirmed.

## II. Transfer to the Northern District of New York Cannot Meet the Interest of Justice Because the Statute of Limitations Bars Plaintiffs' Claims Against SCQ in Any New York Venue

Even if the District Court's analysis somehow amounts to an abuse of discretion, transfer of the claims against SCQ is nonetheless inconsistent with the

17

"interest of justice," 28 U.S.C. § 1406(a), since those claims are time-barred and therefore futile in any New York court.[3]

As explained in *Daniel*, "courts will not 'waste judicial resources by transferring a case that is clearly doomed.'" 428 F.3d at 436 (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). Even where a court lacks jurisdiction, "[i]f a peek at the merits . . . reveals that the case is a sure loser . . . then the court in which it is initially filed—the court that does not have jurisdiction—should dismiss the case rather than waste the time of another court." *Id.* (quoting *Phillips*, 173 F.3d at 620; 611); *see also Esseadi v. U.S. Dep't of Just.*, 160 F. App'x 47, 48 (2d Cir. 2005) (declining "to transfer the petition . . . because the petition is untimely and the Third Circuit would therefore be required to dismiss it").

---

[3] The District Court did not rule on this issue as to SCQ, either as it impacts the transfer of venue analysis or as an independent ground for dismissal. But this Court is "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." *In re Tingling*, 990 F.3d 304, 307 n.5 (2d Cir. 2021) (quoting *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000)); *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 76 n.4 (2d Cir. 2013); *ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155 (2d Cir. 2003). Because SCQ (and Plaintiffs) briefed in the District Court the issue of whether the statute of limitations applies to bar Plaintiffs' claim, *see* Dkt. 40-6 at 6-10; Dkt. 42 at 10-12, this Court can rule on that question where the District Judge did not, particularly since "the issue is purely legal and there is no need for additional fact-finding." *United States v. Gomez*, 877 F.3d 76, 92 (2d Cir. 2017); *see also id.* ("[W]e therefore have 'broad discretion' to consider issues that 'were raised, briefed, and argued in the [d]istrict [c]ourt, but that were not reached there.'" (quoting *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418-19 (2d Cir. 2001))).

So it is here. Plaintiffs filed their claims against SCQ after the expiration of the most generous of the potentially applicable limitations periods had lapsed, and the record on appeal shows that they cannot establish that those claims relate back to, or were functionally commenced upon, a timely filed action.

In briefing the issue below, the relevant parties agreed that Plaintiffs' claims against SCQ were, on their face, filed after the expiration of the limitations period prescribed in the CVA, and that absent relation back to their first-filed SDNY Action complaint, those claims would be untimely. Dkt. 42-11 at 10. Plaintiffs asserted that among the federal procedural tools for relation back, only Rule 15(c)(1)(A) is available to them. Dkt. 42-11 at 10 n.3. It allows an amended pleading to relate back to an original, timely filed action if "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A).

Plaintiffs argued that New York CPLR § 1024 allows their claims against SCQ to relate back to their timely filed complaint. Dkt. 42-11 at 10. Section 1024 allows a plaintiff who does not know the "name or identity of a person who may properly be made a party" to "proceed against such person as an unknown party." But that provision does not save Plaintiffs claims against SCQ for two reasons.

*First*, Plaintiffs plainly did not proceed against SCQ as if under Section 1024. As the District Court recognized in the portion of its Order relating to the timeliness

19

of the claims as to the Oblates, Plaintiffs did not proceed against *any* unknown party from the outset of their filing. A056-57 ("[A]lthough [the Complaint] names 'Black and White Corporations 1-10' as defendants in the caption, it does not describe any conduct at all attributable to any unknown entity . . . . Besides the fact of the caption, there is simply no indication that plaintiffs sought in their original complaint to bring claims against any unknown defendants, rendering section 1024 inapplicable."). Instead, Plaintiffs proceeded against the Sisters of Charity of Montreal, who they described as the "Grey Nuns"—and who they still maintain is a validly named defendant who must remain in the action—and later resolved to *add* SCQ to their claims because, like the Sisters of Charity of Montreal, SCQ "ha[s] Grey Nuns." Dkt. 42-11 at 35 (Plaintiffs arguing in omnibus opposition to motions to dismiss that either or both of Sisters of Charity of Montreal and SCQ could be responsible for the allegations in the Complaint). If Plaintiffs had wished to proceed under Section 1024, they would have pleaded in a way that made their intent to "proceed against [a person whose name they did not know] as an unknown party" apparent. Instead, they named the Sisters of Charity of Montreal and later decided to revise that decision as if they had named a *Doe*. New York civil procedure does not allow that maneuver.

20

*Second*, even if Plaintiffs had proceeded by properly naming an unknown party (rather than naming a party they maintain is still a proper defendant and seeking to add another in that same slot), they would still fail Section 1024's substantive test. This Court has identified the "two requirements" of Section 1024: "First, the party must 'exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name,'" and "[s]econd, the party must describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'" *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013) (quoting *Bumpus v. New York City Transit Auth.*, 66 A.D.3d 26, 29-30 (2d. Dep't 2009)). There is also a third requirement, which arises from the interaction of CPLR 1024 and CPLR 306–b: the newly-named defendant must be served within 120 days of the filing of the complaint. *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017) (citing *Bumpus*, 66 A.D.3d at 31-32).

Here, Plaintiffs' proffered explanation of their diligence efforts, through counsel, is that they were initially satisfied, upon identifying one order of "Grey Nuns," that they had found the proper defendant, despite that there are numerous religious organizations who have historically been associated with "Grey Nuns." Dkt. 42-1, Declaration of Ashley Pileika (Plaintiffs' counsel describing only that "it was brought to our attention the Grey Nuns were involved and responsible for

21

Plaintiffs' sexual abuse" and that only upon speaking with "counsel for the Grey Nuns of Montreal" did counsel first decide to pursue another order of "Grey Nuns" in SCQ). While counsel's affidavit avers that it has gone to "extreme lengths" to name the correct defendants, Plaintiffs importantly do not present any research or efforts they performed *inside the limitations period* to identify the correct nuns. *Id.* at ¶ 14. Plaintiffs thus cannot meet the requirement of timely diligence. *See Bumpus*, 66 A.D.3d at 29-30 (diligence must have occurred inside the limitations period). Or, if Plaintiffs learned of the alleged relevance of SCQ to their claims prior to the expiration of the statute of limitations period, they have given no excuse for failing to timely file their claims.

If nothing else, Plaintiffs plainly did not meet the second requirement of Section 1024—that a plaintiff through its pleading "fairly apprise" the unknown party that he is the intended defendant. By naming an entirely different order of nuns as their defendant, Plaintiffs cannot even arguably have put another order, SCQ, on notice that it has been named. SCQ had no reason to believe, simply because it is affiliated with "Grey Nuns," like so many other religious orders, that Plaintiffs intended to name them *as well as* the Sisters of Charity of Montreal, in a complaint that only named the latter. *See Cotto v. City of New York*, 803 F. App'x 500, 503 (2d Cir. 2020) (finding the Section 1024 notice requirement unmet where "there is no

22

evidence in the record that [officer] had any knowledge that he was the 'John Doe' officer indicated in [plaintiff's] initial complaint or that he knew or should have known that the lawsuit should have been brought against him," especially as "[n]othing in the record indicates that the NYPD or Corporation Counsel apprised [the officer] of the lawsuit").

And of course, Plaintiffs fail the third element of the Section 1024 test because they did not serve SCQ within 120 days of the filing of their action. (It was 166 days from filing before SCQ even learned about the action.) Though New York law allows that deadline to be extended "upon good cause shown or in the interest of justice," *Bumpus*, 66 A.D.3d at 31, Plaintiffs have not established that cause here. The diligence analysis, *infra*, addresses that point in full.

In briefing timeliness issues below, SCQ asserted that the appropriate analysis for relation back of the claims against it is under New York CPLR § 203.[4] Plaintiffs, by failing to argue that provision as applicable to SCQ, waived any such argument. *See* A056, Order at 13 (District Court finding that by not raising the potential

---

[4] In its opening brief in support of its motion to dismiss, SCQ correctly cited the relevant CPLR § 203 text but mistakenly identified the provision by "CPLR § 3025(b)," which is a related provision concerning pleading amendments.

applicability of CPLR § 1024 as to the Oblates in briefing below, Plaintiffs "forfeited" that argument).

But even if a CPLR § 203 argument were available to Plaintiffs, it would fail. That provision:

> allows a party to be added to an action after the expiration of the statute of limitations, and the claim is deemed timely interposed, if (1) the claim arises out of the same conduct, transaction, or occurrence, (2) the additional party is united in interest with the original party, and (3) the additional party knew or should have known that but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against the additional party as well.

*Roco G.C. Corp. v. Bridge View Tower, LLC*, 166 A.D.3d 1031, 1033–34 (2d Dep't 2018) (quoting *Ericksen v. County of Suffolk*, 154 A.D.3d 721, 722 (2d Dep't 2017)). *See also Buran v. Coupal*, 661 N.E.2d 978, 981–82 (N.Y. 1995).

Most glaringly here, Plaintiffs fail the second requirement of Section 203—that SCQ is "united in interest" with any of the originally named parties. That standard is only met "when because of some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim, they will stand or fall together." *Connell v. Hayden*, 83 A.D.2d 30, 43 (2d Dep't 1981); *DaCosta*, 296 F. Supp. 3d at 586 (relevant considerations for unity of interest are "(1) the jural relationship of the parties whose interests are said to be united and (2) the nature of the claim asserted against them by the plaintiff"). The typical

24

relationship establishing unity of interest is "vicarious liability, such as between an employer and employee or a corporation and its agents." *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 122 (E.D.N.Y. 2009) (interpreting NY CPLR § 203). Similar allegations against the defendants will not be sufficient to show a unity of interest; in fact, under a joint tortfeasor theory, "the defendants' interests are *not* united because each will seek to show that he was not at fault and that it was the other who caused the injury." *Connell*, 83 A.D.2d at 45 (emphasis added).

Setting aside that Plaintiffs have not anywhere explained how SCQ is united in interest with any of the timely-named defendants in the SDNY Action complaint, it is abundantly clear that any later-named defendant—just like all defendants to the action—would be very likely to defend itself against Plaintiffs' allegations by demonstrating that it was the other defendants' negligence that proximately and sufficiently caused any injury. And as the District Court found with respect to the claims against the Oblates, the mere fact that more than one defendant is affiliated with the Catholic Church cannot, by itself, create a unity of interest. A055 ("[I]t would be entirely improper to require the Oblates to defend this untimely action simply because all defendants are Catholic."). Because Plaintiffs cannot conceivably establish the unity of interest element, CPLR Section 203 does not save their claims against SCQ.

25

## CONCLUSION

SCQ respectfully requests the Court affirm the District Court's dismissal of,

and denial of request to transfer, Plaintiffs' Complaint.

Dated: New York, New York
    May 27, 2025            BAKER BOTTS L.L.P.

                      */s/ Andrew M. Lankler*
                      Andrew M. Lankler
                      Eric DuPont
                      30 Rockefeller Plaza
                      New York, New York 10112
                      Tele.: (212) 408-2500
                      Fax:  (212) 408-2501
                      andrew.lankler@bakerbotts.com
                      eric.dupont@bakerbotts.com

                      *Attorneys for Defendant-Appellee Sisters of Charity of Quebec*

26

## CERTIFICATE OF COMPLIANCE

Defendant-Appellee's brief complies with Fed. R. App. P. 32(a)(7)(B) and Second Circuit Local Rule 28.1(b) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 6,356 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionately space typeface using Microsoft Word in 14-point font and Times New Roman style.

Dated: New York, New York
    May 27, 2025               BAKER BOTTS L.L.P.

                             */s/ Andrew M. Lankler*
                             Andrew M. Lankler
                             Eric DuPont
                             30 Rockefeller Plaza
                             New York, New York 10112
                             Tele.: (212) 408-2500
                             Fax:  (212) 408-2501
                             andrew.lankler@bakerbotts.com
                             eric.dupont@bakerbotts.com

                             *Attorneys for Defendant-Appellee Sisters of Charity of Quebec*

27